WILLIAMS, BLACK & CO. v. MARY A. WHITING.

*Contract—Payment—Agent—Reference.*

1. When it was agreed between the vendor and vendee of land that the cotton raised on the land during each of the five years for which credit was given, should be forwarded to the plaintiff and sold and the proceeds applied to the payment of the purchase money, the cotton is in advance appropriated to the debt, and as soon as the money is received, the debt is *pro tanto* satisfied, and can only be revived by the consent of the debtor.

2. This consent may be express or result from implication, and, if the latter, must rest on clear and unequivocal evidence of intent.

3. A power to act for another, however, general its terms or wide its scope, can not be enlarged into a power to pervert funds coming into the agent's hands, without clear approval or ratification by the principal.

4. When the referee fails to report the evidence, the proper course is to move to recommit or to require the referee to produce the evidence.

5. It is the duty of the party excepting to show the error excepted to, and to state such of the evidence as is necessary to enable this court to comprehend and decide the point. When the record does not contain *such* evidence, this court cannot review the decision of the Superior Court, but will affirm it.

(*Williams* v. *Johnston, ante,* 532, cited and approved).

CIVIL ACTION, heard upon exceptions to the report of a referee, before *Gudger, Judge,* at Fall Term, 1884, of EDGE-COMBE Superior Court.

There was judgment for the plaintiffs, and the defendant appealed.

*Messrs. Connor & Woodard,* for the plaintiffs.

*Messrs. Jos. J. Martin, David Bell* and *Walter Clark,* for the defendant.

SMITH, C. J. On January 2d, 1878, the plaintiffs constituting the party of the first part, and the defendant, the party of the second part, all residents of the city of New York, entered into an agreement under their several seals, wherein the former, in consideration of thirty-six thousand dollars to be paid, as thereinafter mentioned, covenant to convey to the latter all their right, title, and interest, in a large and valuable plantation in the county of Edgecombe, described by metes and bounds, lying on the side of the track of the Wilmington and Weldon Railroad, and estimated to contain eleven hundred and five and one-half acres, and also certain articles of personal property, and such others as were then on the land.

The defendant covenants on her part, "to pay to the plaintiffs the said sum of thirty-six thousand dollars and interest, as evidenced by certain promissory notes of even date therewith as follows: Four thousand dollars, and interest thereon from date, on the thirty-first day of December, one thousand eight hundred and seventy-eight; four thousand dollars, and interest thereon from date, on the thirty-first day of December, one thousand eight hundred and seventy-nine; four thousand dollars, and interest thereon from date, on the thirty-first day of December, one thousand eight hundred and eighty; four thousand dollars, and interest thereon from date, on the thirty-first day of December, one thousand eight hundred and eighty-one; five thousand dollars, and interest thereon from date, on the thirty-first day of December,

one thousand eight hundred and eighty-two; seven thousand five hundred dollars, and interest thereon from date, on the thirty-first day of December, one thousand eight hundred and eighty-four."

"And the said parties of the first part agree that when the first five of said payments shall have been made and completed, to deliver to said party of the second part, her heirs or assigns, a good and sufficient deed of conveyance of their title to the said property described herein, and free and clear from the mortgage now covering said property for the sum of three thousand dollars, with covenants against the acts of the grantors, upon three days' notice in writing, at such time and place in the city of New York as the said party of the second part may appoint, and to make, execute and deliver such other instruments of release and discharge, as the said party of the second part, her heirs or assigns, or her counsel may request, and upon the delivery of said deed, the said party of the second part shall make, execute and deliver to the parties of the first part, their heirs, executors, administrators and assigns, her certain indenture of mortgage, conveying all the property herein described to secure to them or their heirs or assigns the payment of the balance of said sum, which said mortgage shall provide that upon default being made in the payment of any of the sums thereby secured to be paid, and such default continue for the space of thirty days, that then the whole principal sum shall become due and payable, and the parties of the first part, upon ninety days' notice that they will exercise the power of sale contained in the mortgage, shall be entitled to foreclose said mortgage by advertisement for the space of thirty days, at the court-house door in the town of Tarboro, and three other public places in Edgecombe county, and without the necessity of bringing a regular suit to foreclose the same. It is also agreed between the parties, that the party of the second part, or her assigns, may, subject to the covenants hereinafter set forth, immediately enter upon and take possession of all of the property described therein, as the tenant of the parties of the first part.

And it was understood and agreed between the parties that in case the party of the second part should make default in the payment of either of the said first five instalments as they each became due and payable, then the parties of the first part should be at liberty to annul and make void the contract of sale and treat the party of the second part as tenant for the year immediately preceding; and in that event the parties of the first part should be entitled to seventy bales of good merchantable lint cotton as rent for that year, and as a security for the payment of said rent, the party of the second part agreed that the title of all the crops made on said land should remain and continue in the parties of the first part until the instalment of each of the five years should be fully paid and discharged. It was further covenanted and agreed that the party of the second part should faithfully ship, or cause to be shipped, to the parties of the first part, at the city of New York, all the cotton that should be grown or matured on said plantation during each of the said five years, to be by the parties of the first part sold and the proceeds thereof applied by them in the satisfaction and payment of the notes of the party of the second part falling due in each of those years respectively, and the balance, if any, of such proceeds should be paid over to the party of the second part. And it was covenanted and agreed that should default be made in the payment of any of said first five notes at the maturity thereof, and said default continue for the space of thirty days, that then, that is to say after the expiration of said thirty days, it should be lawful for the parties of the first part, or their appointees, to enter upon and repossess themselves of all of the property described therein, and eject any and all persons from the property without further process, manner or proceeding, it being the meaning and intent of the parties thereto that upon such default being made in the payment of either of said first five mentioned notes, that the parties of the first part should be entitled to the immediate possession of all the said described property without legal proceedings. It was further covenanted and agreed that the par-

ties of the second part, as a part of the consideration, should pay all taxes and assessments of every kind whatsoever, which should be levied or imposed on said property after the date of the agreement, and should deliver immediately to the parties of the first part the bills and receipts showing such payments to have been made. It was further covenanted and agreed that the party of the second part, as a part of the consideration, should keep all of said property insured in good and responsible companies in the sum of twenty-five hundred dollars for the benefit of the parties of the first part, and to deliver said policies of insurance to the parties of the first part. And the said party of the second part further covenants and agrees, that should the said property described, for any cause, revert to the parties of first part, that she will forthwith deliver up and return to them all the personal property in good order and condition, reasonable wear and tear excepted, and where such personal property shall necessarily be used up or consumed, that she will supply the deficiency with other property of the same kind, quantity and value."

"And whereas, there are now pending in the Supreme Court of the State of New York certain actions wherein Brink & Estes are plaintiffs and certain insurance companies are defendants, one-half of the proceeds whereof are by agreement to be paid to the parties of the first part hereto, now it is covenanted and agreed by the parties of the first part that any and all sums by them received from said actions shall be applied for the benefit of the party of the second part in the payment of the third, fourth and fifth of said notes, or so much thereof as may be possible. And it is hereby further covenanted and agreed between the parties hereto, that all the covenants and agreements herein contained shall be obligatory upon and bind the heirs, executors, administrators or assigns of each and all of said parties."

The plaintiffs allege in their complaint that there remains unpaid a large sum due upon the first five notes, stated to be $13,776 $\frac{99}{100}$, with interest at the stipulated rate of seven per

cent. from January 22d, 1883 ; while they have on hand seventy-eight bales of cotton of the estimated value of $2,964.00, the proceeds of which, when sold, are to be applied in reduction of the sum stated; and that nothing has been paid on the other notes.

The plaintiffs demand judgment for what is due upon the notes, and a sale of the land for the satisfaction of the indebtedness. The answer does not controvert the allegations of the making the contract and executing the notes contained in the complaint, but avers that many payments have been made; that large dealings have taken place between the parties, amounting to fifty thousand dollars or more, and that one claimed credit is in dispute; that upon a fair and just statement of the account, it will appear, in the defendant's opinion, that her residuary indebtedness does not exceed five or six thousand dollars.

At Fall Term, 1883, an order of reference by consent, was made to two designated commissioners under the provisions of The Code of Civil Procedure, "for the purpose of stating an account of the dealings between the plaintiffs and the defendant," which they were directed to make out and report at the succeeding term.

The referees rendered their report accordingly, accompanied with the proofs taken in the cause, and embodying a series of findings of fact and of law, distinctly and separately enumerated, to such portions of which, contained in the record, as are deemed material to a full understanding of the subject matter of the exceptions brought up for review, we shall direct our attention.

The only testimony contained in the transcript is that of the defendant, of L. G. Estes, her witness, and of James R. Gaskill, examined for the plaintiffs; and the sole exception of the plaintiffs is to their being charged in the account with the proceeds of certain cotton, sent to and sold by them, the facts concerning which, upon the finding of the referees, are as follows:

The cotton was grown upon the plantation, and thence forwarded to the plaintiffs in New York by the said Estes, as agent

of the defendant, in pursuance of the agreement for the appropriation of the proceeds of sale, and was disposed of with full knowledge of the source from which it came. The moneys received upon the sale were not then applied in reduction of the defendant's indebtedness, but were credited to the agency account of Estes. The latter had before and has since, as such agent, drawn upon funds derived from sales of cotton grown upon the farm, in different sums and in excess of the value of shipments, which drafts were paid by the plaintiffs, the defendant understanding that the payments were by reason of such shipment to them.

The testimony of Estes in regard to his relations with the defendant, and his management of the farm and disposition of its products, is substantially this: He bought a good deal of cotton and sent it forward to the plaintiffs in his own name, and not in his capacity as agent. Some of this may have been shipped by him as agent. The plaintiffs furnished him money to buy and send to them such cotton as was thus purchased and paid for.

That which was shipped by him as agent was raised on the plantation. Money was supplied to him, when needed in running the farm, by the defendant. She was at his farm nearly every winter, when matters connected with the business were discussed between them, but no account was ever rendered. The cotton now in controversy and forwarded to the plaintiffs, was the product of the farm. The witness drew drafts on the plaintiffs, based on the shipments, which were honored by them and the moneys diverted from the uses specified in the agreement. The defendant had a claim on the land prior to that of the plaintiffs, and the purpose in entering into the contract with the plaintiffs was to secure what was due her and to aid the witness.

In the account rendered by the referees, the defendant is credited with profits made on contracts for futures, and is charged with losses sustained in others, of less amount.

44

The agent is admitted to have had the possession and management of the farm, as well as the forwarding of its products in the execution of the defendant's stipulations, to the plaintiffs, for sale and appropriation of the proceeds as provided in the agreement.

The evidence fully sustains the findings of the referees, and the question presented is, whether the funds in dispute and so derived, but misappropriated by the agent afterwards to his own use, constitutes a charge, nevertheless, against the plaintiffs, as a partial payment on the notes. The referees answer the inquiry in the affirmative, but the Judge, in sustaining the plaintiff's exception, rules otherwise, and directs the charge to be stricken from the account. This ruling is presented in the defendant's appeal.

It is to be observed, that under the agreement, "all the cotton that may be grown or matured on said plantation and farm during each of the five years" was to be sent to the plaintiffs to be by them "sold and the proceeds thereof applied by them in the satisfaction and payment of the notes" falling due respectively in that period, and the "balance, if any, of such proceeds," paid to the defendant.

Thus the cotton is in advance, as it is grown, appropriated to a specific debt, the defendant contracting to send it forward, the plaintiffs to sell when received and apply the proceeds to the notes. It is an executed covenant when the moneys arising from the sale come into the plaintiffs' hands. The indebtedness is then *pro tanto* reduced, and the amount so extinguished could only be revived with the consent of the debtor.

Such consent may be express or result from implication, and the latter must rest upon clear and unequivocal evidence of intent. It is sought to be drawn in this case from the general authority conferred upon the agent and exercised by him in conducting the farm, and from the sanction to dealings in futures upon speculative contracts, involved in the credit for profits made, and the charge for losses sustained. But these facts do not warrant an

inference of her assent to the withdrawal and misapplication to the agent's own use, of funds which in the very act of receiving, were appropriated to claims in the plaintiffs' hands.

This legal effect immediately followed the conversion of the cotton into money and the unequivocal consent of the defendant was necessary to prevent it. A power to act for another, however general its terms or wide its scope, presupposes integrity and good faith in its exercise for the benefit of the principal. It cannot be enlarged without a clear approval or ratification by the principal, so as to authorize a perversion of funds coming into the agent's hands, when acting as such, to the use of the agent, when the misapplication is participated in by one, setting up the authority for his own protection. Much less can it extend to a case in which the appropriation has been effected, and it is attempted to undo what has been lawfully done in the interest and for the advantage of the debtor principal. The subject is discussed in *Williams* v. *Johnston, ante,* 532.

The evidence, so far as it is accessible to us, is insufficient to excuse the plaintiffs for permitting the agent to use these funds, and attempting to restore so much of the indebtedness as was discharged by them. In this we concur with the referees and reverse the overruling action of the court which sustains the plaintiffs' exception.

Defendant's exceptions are overruled. These exceptions, 9 in number to the findings of fact, and 8 to the conclusions of law, remain to be considered and disposed of. As to the facts, it may be remarked generally that the appellant has brought the cause to a hearing upon a transcript from which is absent the numerous explanatory exhibits referred to in the report, as well as the account itself and other evidence, it may be, to her great disadvantage. Indeed, these are important to our own correct understanding of the force of the exceptions, largely dependent upon them.

*Ex.* 1. The omission of the referees to report the evidence in reference to the payment of the check for $1,453.

The proper course to be pursued was in a motion to recommit or to require the referees to produce the evidence.   This was not asked, and proceeding with the trial without, the appellant has waived the objection.

*Ex.* 2.  The failure of the referees to credit the defendant with the whole insurance, $12,870.43, received and to be so applied, instead of the reduced sum of $8,772.95, parcel thereof.   The referees refer to exhibit H, as we suppose to show the items which diminish the amount to the last mentioned sum.   Among these items there are  an allowance of $1,000, as an attorney's fee for professional services, and of $1,607 for other expenses incurred in collecting, which the referees sustain, and we cannot undertake to pronounce excessive or unreasonable in the absence of all information of the difficulties attending the collection, or the extent, or nature of the claims which enter into the latter sum.   Still less can we do so in regard to the unmentioned particulars, which, with these, form the aggregate of the reduction.   It is enough to say that there is no evidence impeaching the payments made in securing the result, and this should come from the defendant if we are expected to disturb the conclusions of the referees and of the Judge.

*Ex.* 3.   The general agency of Estes with its limitations has been sufficiently considered.

*Ex.* 4.  The failure to credit the defendant with $1,453, a remittance by the agent to the plaintiffs in a check for that sum.

This sum was sent by Estes with instructions to have it placed as a credit on his individual account, to be applied to defendant's notes when the insurance claims were decided.   These instructions were afterwards modified, and the plaintiffs directed to let the entry of credit remain until the defendant and himself should come to an understanding as to what "we (they) are going to do about the plantation."   No other directions were given, but before the decision of the insurance or any understanding come to about the farm, Estes used the money by drafts drawn against it. This money, he testifies, was in a check from a bank in Maine,

upon another bank, and was the property of the defendant. He remitted it to the plaintiffs, in response to a letter from them, stating that he owed on the defendant's notes, and the entry of this credit was the first on his account, as agent, with them. The fund was then at the disposal of Estes, and stands upon quite a different footing from a fund arising out of sales of cotton made on the farm and embraced in the covenants.

*Exs. 5 and 6.* These exceptions are to the allowance which reduces the insurance money received and need no further comments.

*Ex. 7.* This exception is to the referees' finding, that drafts of Estes on cotton produced on the farm, have been paid by the plaintiffs with the defendant's knowledge. To this matter we have already adverted. What disposition was made of the moneys paid on the drafts, whether used in running the farm and obtaining supplies, or put to some other and what use, does not appear. The mere fact that money was thus drawn out, without showing it was improperly used, does not authorize the inference of the defendant's assent to her agent's misappropriation to his own use.

*Ex. 8.* The sum mentioned, $136.$\frac{19}{100}$, stood as a credit on the account of L. G. Estes & Co., and by the directions of Estes, was transferred to his agency account. It was not applied, nor was there any request that it should be applied, to the notes. The facts are too meagre to enable us to determine whether the defendant is entitled to charge the plaintiffs with the amount.

*Ex. 9.* The same difficulty is encountered in passing upon the sufficiency of this exception.

Exceptions to conclusions of law.

*Exs. 1, 3 and 5.* These exceptions relate to the reduction of the insurance money—payments made in securing it, and the $1,453 remittance already considered.

*Ex. 2.* The objection to the general finding that the defendant is liable for the acts of Estes within the scope of his agency, as a proposition of law is untenable.

*Ex.* 4. The finding that Estes was in the habit of drawing out moneys arising from sales of cotton sent from the farm, with the defendant's consent, is supported by his evidence, while it is not shown to what use the money was put, and whether, if not used in obtaining supplies for the farm, the defendant knew of it and failed to make objection.

*Ex.* 6. The claim for loss on cotton (70 bales) directed to be sold by the agent, but who subsequently, knowing that it was not sold, acquiesced in and ratified the holding. The witness Estes testifies to positive instructions to sell without any assent afterwards to the retention, but we have not the testimony upon which the commissioners find the ratification, and cannot undertake to reverse their conclusion in the absence of other evidence.

*Exs.* 7 *and* 8. These are confined to the general results of the account as stated, and require no further examination. These exceptions were all overruled by the Court, and we sustain the action of the Court in so doing.

The account rendered by the commissioners must therefore stand. There is error in sustaining the plaintiffs' exceptions, but none in overruling the exceptions of the defendant.

As the cause can be more conveniently conducted to its final result in the court below this will be certified to the end that judgment be entered and further proceedings be there had in accordance with this opinion.

The costs of the appeal will be borne equally by the two parties.

Error.                                    Remanded.