## STATE v̇. HIRAM WILSON.

*Indictment for Conspiracy—Marriage, Validity of—Indictment — Duplicity — Trial — Evidence— Instructions—Sentence— Appeal—Record.*

1. It is not improper for the trial Judge, in sentencing a person convicted of an offence, to recite in the judgment, as a reason for the severity of the sentence, the many offences of which the defendant has been previously convicted.

2. An indictment charging three defendants with having conspired to procure sham marriages between two of them and two women is not bad for duplicity.

3. Duplicity in a bill of indictment is ground only for a motion to quash and, being cured by verdict, is not ground for a motion in arrest of judgment.

4. While consent is essential to marriage in this State it is not the only essential but it must be acknowledged in the manner and before some person prescribed by Section 1812 of *The Code.*

5. A marriage pretendedly celebrated before an unauthorized person being a nullity and not capable of being legalized by consent, a conspiracy to procure sexual intercourse with a woman through such pretended marriage is an indictable offence.

6 The objection that there is no sufficient evidence to go to the jury against defendants on trial is not ground for a motion in arrest of judgment, which can only be based upon defects apparent upon the face of the record.

7. An exception that there is no evidence against defendants on trial sufficient to go to the jury is too late when taken after verdict

8 Where the error complained of is the refusal of a prayer for instruction that there was no evidence to go to the jury against the defendant, it is the duty of the appellant to justify his prayer by showing that there was no such evidence, either by stating that as a fact in his case on appeal or by setting out the evidence therein and showing thereupon that there was really no evidence on the material point.

9. Where the State's solicitor agrees that the trial Judge's notes of the testimony shall be a part of the record on appeal and such notes are incomplete, but are the only record of the evidence, he is bound by the insufficiency of the evidence shown thereby.

INDICTMENT for conspiracy to procure a fraudulent marriage in order to encompass the seduction and defilement of

two women, tried before *Adams, J.,* and a jury at Spring Term, 1897, of YANCEY Superior Court. The indictment was as follows:

"The jurors, etc., present that Plato Ray, Hiram Wilson, and William Fender, etc., on the first day of March, 1896, with force and arms, etc., unlawfully and wilfully and feloniously did conspire, combine, confederate, and agree together, wickedly knowingly, falsely, feloniously, and designedly, to procure, by false pretenses, false representations, and fraudulent means, Hattie Phillips and Hettie Phillips to allow Plato Ray and Hiram Wilson to have illicit carnal connection with them, by going through a sham marriage, and seducing them, the said Hattie Phillips and Hettie Phillips, to believe it to be a real *bona fide* marriage; and, by said unlawful, wilful, and felonious conspiracy so entered into by Plato Ray, Hiram Wilson, and William Fender, said sham marriage was procured, and said Hattie and Hettie Phillips carnally known by said Plato Ray and Hiram Wilson, to the great damage of the said Hattie Phillips and Hettie Phillips, and to the evil example of all good citizens, against the form of the Statute, and against the peace and dignity of the State."

From the fragmentary and incomplete statement of the evidence it appears that Hattie Phillips, witness for the State, testified that the defendant Ray came to her and told her that he had a license for their marriage, they being then engaged to be married; that they then went to the house of the defendant Fender and told him they wanted to go to a magistrate, that Fender said J. A. Austin was a magistrate and thereupon they all went to Austin's house and witness and Ray were married by Austin; after returning to Fender's witness learned that they were not married and witness started home, the defendant Wilson, with a sister of the witness, accompanying her a part of the way. Witness

stated that she went to Austin's to be married and thought she was married until Austin said "this will ruin us."

J. A. Austin, witness for the State, testified that Hattie Phillips and defendant Ray came to his house about 10 o'clock at night in company with the defendant Wilson, Will Fender and his wife and others, and·wanted to know whether he could marry them and he replied that he could marry them for fun; that he then went through some sort of a ceremony; that he was not a Justice of the Peace. He further testified "Mary Edwards was with the crowd and she is a prostitute. After the ceremony I went to Sid Phillips. I reckon Hattie heard me say I had no license; she was standing in the door. I guess they all understood that it was all in fun. The father of Hattie had us up before a Justice of the Peace and we compromised by paying him $30.00. I and Ray paid Phillips $15.00."

The mother of Hattie testified that her daughter came home next morning "when the chickens were crowing;" that Hattie was not in the habit of going out at night and never went to school a day in her life.

A witness for the defendants testified. that he saw Hattie the next morning after the alleged marriage; that she was crying and that, in reply to a question whether she was married, she said the boys said she was married—that Austin married her and Ray;—that the parties had told her she was going to get married but she didn't believe she was for she knew Austin couldn't marry any one.

Defendants moved in arrest of judgment (1) for that the bill was void for duplicity, in that, if any offence at all was charged, the defendants were guilty of two separate and distinct offences; (2) that the bill did not charge the defendants with the intent to commit any felonious crime known to the law of the State; (3) that there was no evidence sufficient to go to the jury as to the guilt of Hiram Wilson,

no witness having testified that he was a party to any fraud or the procurement of any sham marriage between the defendant Plato Ray and the prosecuting witness Hattie Phillips; (4) that there was no testimony that the defendants Plato Ray or Hiram Wilson intended to have illicit intercourse with the prosecutrices, Hattie or Hettie Phillips, or that they had such intercouse with either of them. Defendants also moved in arrest of judgment the fact that his Honor failed to charge as prayed for by them, as follows, *to-wit:* (1) "That there is no evidence of conspiracy between the defendants, and no assent to do any unlawful act. (2) Before you can find the defendants guilty as charged, you must find beyond a reasonable doubt that the defendants, by assent and confederation between themselves, conspired to deceive the said Hattie Phillips by a mock marriage, and that she was deceived." These charges his Honor refused to give. The defendants further excepted to his Honor's charge, for that he charged the jury that it was no defence even if Austin, the man who performed the ceremony between Plato Ray and Hattie Phillips, was a Justice of the Peace or was authorized to solemnize marriages.

His Honor rendered the following judgment :

"It appearing to the Court, as to Wilson, that at the last Term of this Court this defendant was indicted for an assault with a pistol by shooting a man named Shook through the arm; and it further appearing that the defendant at the same term of the Court was indicted for carrying a pistol and upon both of said charges the defendant plead guilty; and it further appearing to the Court that this defendant is a notorious violator of the law and openly defies the law and its process and at the last time of the Court he was allowed to plead guilty and the judgment was suspended in accordance with an agreement with the solicitor of this District and that, too, in the absence of counsel who had

STATE *v.* WILSON.

been employed to prosecute this defendant and after the prosecuting witness, who had been shot through the arm and his arm broken, had been discharged by the solicitor and told that he need not appear until this Term of the Court; and it further appearing that said shooting was without justification or provocation; the judgment of the Court is that this defendant be put upon the public roads of Buncombe County for a term of three years. From this judgment defendant Wilson appealed.

*Mr. Zeb V. Walser, Attorney General,* and *Mr. J. T. Perkins,* for the State.

*Mr. E. J. Justice,* for defendant (appellant).

CLARK, J.: The defendants, Plato Ray, Hiram Wilson and Will Fender, are charged with a conspiracy to procure Hattie Phillips and Hettie Phillips to have carnal intercourse with said Ray and Wilson through sham marriages celebrated before a person not authorized, and thereby seducing the women named through their belief that it was a valid marriage.

The indictment is very inartificially drawn, though as to form its defects are probably cured by *The Code,* Section 1183. The objection that the Judge, in sentencing Wilson to three years on the public roads, recited as reasons for the severity of the sentence the many offences of which he had been theretofore convicted, and his general bad character, is not well taken. Such matters ought justly and properly to be considered, as well as, on the other hand, a defendant's previous good character in lightening the sentence to be imposed. In England and some of the States of this country there is an "Habitual Criminals" Act which requires heavier sentences for such offenders. Whar. Cr. P. L. and Pr. §934 (9th Ed.); 1 McClain Cr. L., 528; *Moore* v. *Missouri,* 159 U. S., 673.

STATE *v.* WILSON.

The first ground of the motion in arrest of judgment that the bill is bad for duplicity cannot be sustained.  It is true that the joining of two separate offences in the same count is bad for duplicity (*State* v. *Cooper*, 101 N. C., 684) or the charging different persons with different offences in the same indictment (*State* v. *Hall*, 97 N. C., 474,) both cited with approval in *State* v. *Harris*, 106 N. C., 682, but here the three defendants are charged with one and the same offence, *to-wit:* conspiracy to procure certain persons to be duped into illicit carnal intercourse.   A charge that A stole the property of C and that B stole the property of D is bad for duplicity if made in one bill, but the  charge that A, B and E conspired to steal  the property of C and D  and that C's property· was to be carried off by one conspirator and D's property by another, is not bad for duplicity, since the offence charged is not the larceny, which would be separate and distinct offences, but the conspiracy which is a single offence participated in by all.   2 McClain, *supra*, § 978. Besides, duplicity is ground only for a motion to quash. Being cured by the verdict, it cannot be used as ground for a motion in arrest of judgment.   Whar., *supra*, §§ 255, 760.

As however the case must go back for other reasons, the Solicitor may consider whether it is not advisable to  send a more carefully drawn bill and whether it would not simplify the trial to send two bills, one charging the conspiracy to deceive Hattie Phillips by a sham marriage and the other charging a conspiracy to deceive her sister by a similar device.

The second ground in arrest of judgment is that no offence is charged.   It was urged that consent makes marriage and, therefore, though the person solemnizing it was neither "an ordained minister or a Justice of the Peace," (nor was the marriage according to the customs of the Society of Friends) as provided in *The  Code*, Section 1812, it would

be a valid marriage. Such is not the law in North Carolina. Consent is essential to marriage but it is not the only essential. 14 Am. & Eng. Enc., 472, note 3. In this State it must be acknowledged in the manner, and before some person, prescribed by the Section of *The Code* just cited. No celebration was required by The Canon Law prior to the Council of Trent, nor by the Civil Law, nor by the law in Scotland, nor in many States in this Union. In some States the question has never been decided. In other States celebration before some person authorized by law is held essential, as (after some hesitation) has been held to be the common law in England. Stewart Marriage & Div., Section 90; 14 Am. & Eng. Enc., 515. In the latter class is North Carolina.

There is no such thing as marriage simply by consent in this State. Ruffin, C. J., in *State* v. *Samuel,* 19 N. C., 177, and *State* v. *Bray,* 35 N. C., 290; Gaston, J., in *State* v. *Patterson,* 24 N. C., 346; Pearson, C. J., in *Cooke* v. *Cooke,* 61 N. C., 583, and the same is recognized as the law in the more recent cases of *State* v. *Parker,* 106 N. C., 711, and *State* v. *Melton,* 120 N. C., 591. In *State* v. *Bray, supra,* Ruffin, C. J., in an interesting discussion tracing our marriage law shows that, originally in this Colony, valid marriages could only be solemnized by ministers of the Church of England (with the result, as we now know from the "Colonial Records" that a large part of the population were not legally married, owing to the scarcity of such ministers). In 1715, Ch. 1, reciting the inconvenience from scarcity of ministers of the established Church, authorized the Governor of the Colony to solemnize marriages; then in 1741, Chapter 1, empowered Justices of the Peace to perform the ceremony; in 1766, Ch. 9, the privilege was extended to ministers of the Presbyterian Church, and at last, in 1778, Ch. 7, to ministers of all other denominations, and marriages according to the custom of the Society of Friends were

also made valid. This last, made a little broader, is now *The Code*, § 1812. *State* v. *Parker*, 106 N. C., 711.

From this summary, it may be seen that a marriage pretendedly celebrated before a person not authorized would be a nullity, and a conspiracy to procure a woman to submit herself to the embraces of a man by false and fraudulent representations that the officiating person had authority to solemnize the rites of matrimony would be a conspiracy to do an unlawful act, and indictable. *State* v. *Younger*, 12 N. C., 357; 2 McClain, *supra*, § 959.

*State* v. *Brown*, 119 N. C., 825, merely held that where a private citizen celebrated a marriage between a man and woman with their consent, no fraud or conspiracy being charged, it was not indictable. That is a very different matter from the charge here. In the case stated in *State* v. *Brown*, the ceremony was a nullity and the man and woman living together on the strength of it would have been indictable for fornication and adultery, but there being nothing charged against the person officiating beyond his want of authority there was no criminal offence as to him.

The third and fourth grounds in arrest of judgment are that there was no evidence sufficient to go to the jury against the defendants. These are not matters to be urged in arrest of judgment which can only be based upon defects upon the face of the record, and treated even as an exception it is too late when taken after verdict. *State* v. *Harris*, 120 N. C., 577, citing *State* v. *Kiger*, 115 N. C., 746; *State* v. *Hart*, 116 N. C., 976; *Holden* v. *Strickland*, 116 N. C., 185; *Sutton* v. *Walters*, 118 N. C., 495; *Riley* v. *Hall*, 119 N. C., 406; *State* v. *Leach*, Ibid, 828, and other cases.

The fifth ground in arrest of judgment is that the Court declined to charge as prayed that there was no evidence of conspiracy between the defendants, and no agreement to do an unlawful act. This is certainly not ground in arrest of

121—83

judgment, but we may treat it as an exception for refusal to charge. The burden was on the appellant to justify his prayer by showing that, in truth, there was no evidence, either by stating that as a fact in his case on appeal or setting out the evidence in his statement of the case and showing therefrom that there was none on that point. *Williams* v. *Whiting*, 92 N. C., 683; *Merrell* v. *Whitmire*, 110 N. C., 367; *Falkner* v. *Thompson*, 112 N. C., 455; *James* v. *R. R.*, at this term. He did not do that, but the solicitor in accepting the appellant's case on appeal generously came to his aid by adding that he did so on the condition that the "Judge's notes of the testimony with instructions asked and refused, are made a part of the case on appeal." The Clerk sends up the original of the Judge's notes of the testimony on file in his office and certifies that he does so, in lieu of sending a transcript thereof, because he "is not able to read the same." Upon inspecting them, he is held excusable. Deciphering them the best we are able, we can find no sufficient evidence therein to justify the refusal to charge as prayed. It may be, and is probable, that the evidence was much fuller and that the Judge's notes are rather memoranda than a transcript of the evidence. But the Solicitor has had them put into the case on appeal as a true statement of what the evidence was and the appellate Court is bound by them. Such method of making up a case on appeal cannot be commended and if followed would cause frequent miscarriages of justice. The Solicitor should have stated the evidence in his counter case (if he did not accept appellants' case) and if the appellants did not accept the counter-case they could have sent it to the Judge to settle. *State* v. *Baker*, 119 N. C., 912.

From the importance of the subject we have discussed the points presented but on the last ground we must send the case back for a new trial.

New trial.