CASSIUS L. PEACOCK, III, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Peacock v. Commissioner
Docket No. 8162-76.
United States Tax Court
T.C. Memo 1978-30; 1978 Tax Ct. Memo LEXIS 486; 37 T.C.M. (CCH) 177; T.C.M. (RIA) 780030; January 24, 1978, Filed Cassius L. Peacock, III, pro se. Richard A. Jones, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1974 in the amount of $278.35. Some of the issues raised by the pleadings have been disposed of by the parties, leaving for *488 our decision the following: (1) Whether, for the year 1974, petitioner is entitled to a dependency exemption for Carol Marie Jones (hereinafter Marie) because she was petitioner's spouse or his dependent within the meaning of sections 151 and 152, I.R.C. 1954; [1]
(2) whether petitioner is entitled to include in his medical expense deduction amounts expended for medical care for Marie, toothbrushes for Marie and his children, a fee for membership in an exercise gym for himself and Marie, sunglasses for Marie, leotards for Marie, and fees for employment of a baby-sitter while Marie visited a doctor or dentist; (3) whether amounts expended by petitioner for lunches for himself and other individuals who worked in his division of the corporation by which he was employed, green and tournament fees for himself in playing golf with other employees of the corporation by which he was employed, and refreshments bought for himself and the other employees after such games are properly deductible by petitioner as business expenses; (4) whether petitioner is entitled to deductions for expenses of a home office, purchase of certain periodicals, telephone costs, and certain other expenses as *489 ordinary and necessary expenses incurred in carrying on a trade or business apart from his employment. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, whose residence was in Mesa, Arizona at the time the petition in this case was filed, filed an individual income tax return for the calendar year 1974 with the Western Region Service Center, Ogden, Utah. On this return petitioner claimed four exemptions, one by checking the regular exemption for himself, one by checking the regular exemption under "spouse," and exemptions for Heather Maria Minet Peacock (hereinafter Heather) and Laura Denise Matin Peacock (hereinafter Laura). During the year 1974, Marie, Heather and Laura resided with petitioner in a residence legal title to which was in petitioner's name. Heather and Laura are the natural children of petitioner and Marie. Heather was born in North Carolina on June 20, 1973, and Laura was born in Phoenix, Arizona on August 31, 1974. In late October 1972, while Marie was pregnant with Heather, petitioner and Marie *490 entered into an agreement that they would raise the child which they were expecting together and would raise any other children they might have together. When this agreement was reached by petitioner and Marie, on or about October 22, 1972, Marie moved into petitioner's apartment, and petitioner and Marie resided in this apartment in North Carolina together from that time until August 1973. In August 1973 petitioner and Marie moved from North Carolina to Arizona, and they have resided in Arizona from August 1973 throughout the time of the trial of this case. When Marie moved into the apartment with petitioner in October 1972, she asked petitioner's permission to use his name and has, since that time, used the name of Marie J. Peacock. Marie was employed at the time she began residing with petitioner and continued her employment throughout part of 1973 until shortly before Heather was born. Since that time and throughout the year 1974 and for some time subsequent thereto, Marie was not employed outside of the home she and petitioner and their children shared, and all expenses of that home and the expenses of Marie and the children have been paid by petitioner from his earnings. *491 In addition to Heather and Laura, petitioner and Marie have a third child who was born in 1975 and at the time of the trial of this case they were expecting their fourth child. Petitioner and Marie have never had a ceremonial marriage under the laws of any state and have not attempted in any way to comply with any state marriage ceremonial requirement. They did not intend to or consider themselves as having entered into a common-law marriage. Neither petitioner nor Marie publicized the fact that they were not legally married. Petitioner does not publicize that he and Marie are married and he has never heard Marie state to any third party that she and petitioner are married. While the only specific agreement which petitioner and Marie made was that they would raise their children together, in fact Marie did prepare the meals for herself, the children and petitioner, wash the children's and petitioner's clothes, care for the children and do some of the general housework connected with their residence. During the year 1974, petitioner was employed on a full-time basis by the Semi-Conductor Products Division of Motorola, Inc. (hereinafter Motorola). Petitioner's employment was *492 in the Data Processing Group of this division of Motorola. This group developed processing systems for use by materials groups of Motorola. Although petitioner was not in any way required by his employer to pay for the lunches or provide refreshments for any of his fellow employees, petitioner did on occasion pick up the tab for lunch for himself and fellow employees because he thought he was better able to discuss the available data processing systems for use by the materials groups of Motorola at luncheons away from the office. During the year 1974, petitioner expended $67.22 for lunches away from Motorola's office for himself and other employees of Motorola. During 1974, petitioner expended $178 for golf green and tournament fees for himself, and $7.75 for golf balls for himself on occasions when he was playing golf with other employees of Motorola. While Motorola encouraged its employees to participate in golf leagues and other athletic leagues of employees of the company, it did not require petitioner or any other employee to so participate. During 1974, petitioner expended $25.67 for refreshments for himself and other employees of Motorola after golf games or golf tournaments.
*493 During 1974, petitioner expended $24.30 to have the suits which he wore to work cleaned. These suits were regular street-wear suits, suitable for and actually used by petitioner for wear when not engaged in his employment at Motorola. During 1974, petitioner was looking into establishing an investment partnership which he planned to call "Turner and Peacock Associates." Although the only funds invested in this planned investment partnership during the year 1974 were funds of petitioner which were placed in a bank account and on which he received $2.52 interest, petitioner planned to allow investments in this partnership by the direct descendants of his maternal and paternal grandfathers. During 1974, petitioner had not directly approached any other members of his family with respect to participating in "Turner and Peacock Associates." At the date of the trial of this case in May 1977 the only other funds in "Turner and Peacock Associates" were funds petitioner had placed therein for his children and an amount his sister had placed therein for her child. Petitioner had not at that time actually approached his cousins with respect to their participation or the participation of *494 their children. During 1974, petitioner was not anticipating any reimbursement for his work in connection with "Turner and Peacock Associates" other than for his out-of-pocket costs and possibly, although he was then undecided, reimbursement for his time at a nominal rate. As of the date of the trial of this case petitioner had not received any reimbursement in connection with any work for "Turner and Peacock Associates." During 1974, petitioner used one room in his house as an office. From January 1, 1974, through March 31, 1974, this room was located in the apartment where petitioner, Marie and Heather resided. In April 1974, petitioner, Marie and Heather moved into the house which petitioner purchased in Mesa, Arizona and the room which petitioner used as an office was located in this house. During 1974, petitioner's monthly electric bills at the apartment totaled $92.22 and his monthly electric bills at the residence totaled $452.19. During 1974, petitioner's monthly bills for water, sewer and refuse service at the house in Mesa, Arizona totaled $99.99. During 1974, petitioner sent a check for $37.50 to the "National 'Write your Congressman' Club," and expended $78.48 *495 for books and periodicals and $14.21 for various miscellaneous supplies such as paper and postage stamps. Petitioner paid a total of $40,615 for the house he purchased in 1974 in Mesa, Arizona. Of this total cost, $7,600 is properly allocable to land. The useful life of the structure at the date petitioner purchased it was 45 years. The house contained the following rooms of the dimensions indicated: Room
Dimensions
Family Room
11 feet 9 inch x 19 feet 6 inch
Kitchen
10 feet 2 inch x 10 feet 10 inch
Living Room
19 feet 10 inch x 13 feet 1 inch
Dining Room
9 feet 7 inch x 12 feet 7 inch
Bedroom No. 1
10 feet 7 inch x 11 feet 8 inch
Bedroom No. 2
10 feet 2 inch x 13 feet 0 inch
Bedroom No. 3
10 feet 3 inch x 11 feet 3 inch
Bedroom No. 4
14 feet 5 inch x 13 feet 10 inch
The room petitioner used as an office was Bedroom No. 3. During the year 1974, petitioner expended for medical care not compensated for by insurance the following amounts for the recipients indicated: Heather
Petitioner
and Laura
Marie
Doctors
$167.25
$ 37.00
$172.00
Hospital
150.00
Diagnostic Lab
Work
24.50
Natural Childbirth
Classes
15.00
15.00
Heating Pad
2.77
Medical Travel
21.70
21.70
Medical Insurance
75.50
Total
$257.75
$211.47
$233.20
*496 In addition to the above expenses petitioner in 1974 purchased toothbrushes for Marie and his children at a total cost of $2.15. These tooth-brushes were purchased upon the recommendation of petitioner's dentist that petitioner, Marie and their children exercise preventive oral hygiene. During 1974, petitioner paid $18 for a membership for himself and Marie at an exercise gym in Mesa, Arizona. Both petitioner's and Marie's doctor recommended to them that they routinely obtain some exercise. During 1974, petitioner expended $2.88 for leotards for Marie to wear at the exercise gym, as well as at the natural childbirth classes which were attended by petitioner and Marie while Marie was pregnant with Laura. During 1974, petitioner purchased nonprescription sunglasses for Marie at a cost of $4 for her to use to cut down the glare of the Arizona sun. During 1974, petitioner paid $18.90 to a baby-sitter for Heather while Marie was visiting a doctor or dentist. Respondent in his notice of deficiency disallowed one of the four exemptions claimed by petitioner on his return with the explanation that -- The exemption is not allowed since a person may not be considered a "member of *497 taxpayer's" household for dependency purposes if the relationship between such person and the taxpayer is in violation of local law. Respondent also disallowed $203.85 of the medical expenses claimed by petitioner on his return with the explanation that -- * * * You may not deduct expenses incurred by a person who does not qualify as your exemption. * * * Respondent in his notice of deficiency also explained that expenses paid for natural childbirth classes and baby-sitting were personal and not medical expenses. In the notice of deficiency respondent also disallowed some of the business expenses claimed by petitioner with the explanation that the expenses disallowed were personal expenses. Petitioner on an amended return and in his petition claimed business expense deductions for a business aside from his regular employment. On brief, petitioner conceded that some of these business expense deductions claimed by him should properly have been considered capital expenditures, but continued to claim total expenses of $576.51 for home office expense, $37.50 for "Lobby Washington," $78.48 for books and periodicals, and $14.21 for miscellaneous supplies. Respondent takes *498 the position that petitioner is not entitled to the claimed deduction for home office expense and is not entitled to any deduction for expenses in connection with a business other than his employment at Motorola. OPINION Petitioner's first contention is that under the definition of "spouse" in "Webster's Third New International Dictionary of the English Language Unabridged" as published by G. and C. Merriam Co., Marie, during 1974, was his spouse. [2] Petitioner argues that the part of the definition of "spouse" which refers to an agreement or treaty applies to the agreement he and Marie had to raise their children together, thereby bringing them within this definition of spouse. On brief he also argues that -- The word "spouse" having as a synonym the word "wife," encompasses Marie who is "* * * a woman (* * *) acting in a specified capacity," specifically the capacity of joint-tenant in the raising of (children), as evidenced by * * * our agreement to raise the children together * * *. *499 Whatever meaning aside from a husband or wife the word "spouse" may have, it is clear from the Internal Revenue Code as a whole that "spouse" as used therein refers to a husband or wife who is legally married. See Untermann v. Commissioner,38 T.C. 93 (1962). Petitioner makes an extensive argument that for the state to interfere with the relationship of individuals so that an exemption is denied to him for Marie either as a spouse or as a dependent is contrary to the Constitution of the United States. However, he cites no authority for these contentions. Only those exemptions and deductions allowed by law may properly be claimed by an individual. Petitioner throughout the trial and on brief stated that he and Marie are not legally married and are not common-law husband and wife. We hold that Marie is not petitioner's spouse within the meaning of section 151. In the alternative petitioner argues that since Marie lived in his household and he contributed her entire support and she did not have any income, he is entitled to an exemption for Marie under the provision of section 152(a)(9). This section provides that a dependent includes -- An individual *500 (other than an individual who at any time during the taxable year was the spouse, determined without regard to section 153, of the taxpayer) who, for the taxable year of the taxpayer, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household, * * * Respondent does not deny that Marie resided in petitioner's household, that she had no income during the year 1974, and that petitioner contributed her full support. Respondent argues, however, that in fact Marie rendered services for her support in keeping petitioner's house and that, in any event, under the provision of section 152(b)(5) [3] Marie is not to be considered a member of petitioner's household. The basis of respondent's disallowance of petitioner's claimed exemption for Marie was that their relationship was in violation of local law. Respondent *501 raised the issue of the services contributed by Marie by amendment to answer. Since, in our view, petitioner is not entitled to claim a dependency exemption for Marie because of the provisions of section 152(b)(5), we need not analyze the evidence to see if it is sufficient to support respondent's alternate contention that the value of the services contributed to petitioner by Marie were equal to or greater than the support she received from petitioner. The record is clear that petitioner and Marie never were married in any formal ceremony and they did not consider themselves to have a common-law marriage. Petitioner and Marie could not have a common-law marriage since under the laws of North Carolina and Arizona, the only two states in which they lived in the same household, common-law marriage is not recognized. N.C. Gen. Stat. sec. 51-1(1976), [4]State v. Wilson,121 N.C. 650, 28 S.E. 416 (1897); Ariz.Rev. Stat. Ann. sec. 25-111 (1976); [5]Levy v. Blakely,41 Ariz. 327, 18 P.2nd 263 (1933). [6]
*502 On the facts in this record, petitioner has failed to show that the relationship between himself and Marie was not in violation of the Arizona law. Section 13-222 of the Revised Statutes of Arizona provides that a person who lives in a state of "open and notorious cohabitation or adultery is guilty of a felony." [7] In State v. Griffin,58 Ariz. 187, 118 P.2d 676 (1941), the court pointed out that two unmarried persons could not commit adultery, but that the provision of Arizona law which is now section 13.222 sets up a separate and different crime. The court in this regard stated: The gist of the offense is the open and notorious conduct which offends the moral sense of the public, and it is in no way dependent on the attitude of an injured spouse. Since this is true, the cohabitation must be open, notorious, and more or less continuous, and the offense may be committed between two unmarried persons as well as between those, one of whom, at least, is married. *503 Petitioner argues that his relationship with Marie was not open and notorious cohabitation under the Arizona law. However, petitioner has failed to show that such is the situation. In this regard the parties stipulated that-- The petitioner and Marie would testify that neither the petitioner nor Marie publicized the fact that they are not legally married. The petitioner likewise would testify that he does not publicize that he and Marie are married, and he will testify that he has never heard Marie state to any third party that she and the petitioner are married. * * * The record shows that petitioner and Marie had three children born while they were sharing the same residence. Certainly, on this basis it is reasonable to conclude that petitioner and Marie were cohabiting. In our view, petitioner's and Marie's not publicizing that they were not married and Marie's using petitioner's name is insufficient evidence to show that their cohabitation was not open and notorious. This record even fails to show that it was not public knowledge in the community in which petitioner and Marie lived that they were not married even though they did not publicize that fact. [8] We therefore *504 hold that petitioner is not entitled to an exemption for Marie as his spouse or for a dependency exemption for Marie under section 152(a)(9). Estate of Buckley,37 T.C. 664 (1962). See also Turnipseed v. Commissioner,27 T.C. 758 (1957). Since we have concluded that *505 Marie was not petitioner's spouse or dependent within the meaning of sections 151 and 152, it follows that petitioner is not entitled under section 213(a) to the deduction for the medical expenses which he paid for Marie. [9]
Petitioner claimed as a deduction the amount of $67.22 which he paid for lunches for himself and other employees of his division of Motorola, $178 which he paid for his own golf green and tournament fees, $7.75 which he paid for his own golf balls, and $25.67 which he paid for refreshments for himself and *506 other Motorola employees after golf games or tournaments. The evidence shows that petitioner was not required by his employer to pay for lunches or refreshments away from his place of business for other employees or to participate in golf tournaments. While petitioner testified that he considered it helpful to talk to other employees away from the plant, there is no indication in the record that for one employee to pay for the lunch of other employees of Motorola was an ordinary employee expense. Petitioner's business was that of being an employee of Motorola. Petitioner did what many employees of corporations choose to do in participating in the corporate golf tournaments. The record shows that this participation was not required. It was a social aspect of employment at Motorola in which petitioner chose to participate. There is nothing in this record to indicate that expenditures for lunches, refreshments or golf were other than personal expenses. See Graham v. Commissioner,35 T.C. 273, 279 (1960); Noland v. Commissioner,269 F.2d 108 (4th Cir. 1959), affg. a Memorandum Opinion of this Court. Petitioner claimed a deduction of $24.30 for *507 having the suits he wore to work cleaned. These suits were ordinary business suits which petitioner could and did wear at other times. Under the record here, it is clear that the cost of cleaning the suits was a nondeductible personal expenditure. See Stiner v. United States,524 F.2d 640 (10th Cir. 1975). Section 262 of the Code provides that except as expressly provided to the contrary, no deduction shall be allowed for personal living expenses. The record is also totally deficient to sustain petitioner's claimed deduction for expenses of a business aside from his employment at Motorola. The record is fairly clear that "Turner and Peacock Associates" was merely an idea with which petitioner was toying during the year 1974. As a consequence, any expenses which petitioner incurred in investigating the possibility of establishing such an investment partnership would not be deductible in 1974 rather than being capitalized. See Frank v. Commissioner,20 T.C. 511 (1953). On brief petitioner has apparently recognized that "Turner and Peacock Associates" was not an operating business in 1974 and has conceded that many of the items he claimed as *508 deductible expenses should have been capitalized. Petitioner, however, has continued to claim that a portion of the rent of his apartment and cost of maintaining his house, his telephone service, "lobby" expense, books and periodicals, and miscellaneous expenses were properly deductible as business expenses in connection with any business that he might ultimately develop as "Turner and Peacock Associates." Petitioner apparently does not claim the "home office" expense in connection with his work at Motorola. In any event, since the record is clear that Motorola furnished petitioner an adequate office, petitioner is not entitled to a deduction for a home office because of any work for Motorola he might have done at home. See Sharon v. Commissioner,66 T.C. 515, 522-523 (1976). In our view petitioner has totally failed to show that he was pursuing any business other than that of being an employee of Motorola in 1974. The record shows that petitioner had placed some funds in a bank account which he considered to be his investment in "Turner and Peacock Associates." In 1974 he received $2.52 interest on these funds. There is no showing that petitioner in 1974 made *509 any profit from whatever he did in connection with "Turner and Peacock Associates" or that he had any reasonable expectation of ever making a profit from any activity which might develop into "Turner and Peacock Associates." An intent to make a profit is a necessary element of a business. Westerman v. Commissioner,55 T.C. 478 (1970). Based on this record petitioner has totally failed to show that he is entitled to the "home office," telephone service, "lobby" expense, periodical cost and miscellaneous expenses he claimed to be deductible business expenses. Since Marie was not a dependent of petitioner, the cost of the baby-sitter for her to go to the doctor, her sunglasses, her leotards, and her toothbrushes would not be deductible by petitioner under section 213(a) as medical expenses, even if they otherwise qualified as medical expenses. Of the $2.15 which petitioner testified he paid for toothbrushes for Marie and the children, there is no showing what portion of the amount was allocable to the children. In any event, toothbrushes for ordinary use are not a proper deduction as a medical expense. The $18 which petitioner paid for the exercise club was for *510 himself and Marie. As above stated, petitioner is not entitled to deduct medical expenses paid for Marie since she was not his dependent. The record is clear that there was no specific health reason why petitioner needed to participate in an exercise gym as distinguished from the general proposition that such exercise is generally good for any person. Under the facts here present petitioner has failed to show that whatever portion of the $18 was for his dues to the exercise club was a proper deduction as a medical expense. Because of the agreements between the parties with respect to certain issues, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
2. 1 Spouse * * * n-s [ME spuse, spouse, fr. OF spus, spous, espus (masc.), spuse, espouse (fem.), fr. L. sponsus (masc.) betrothed man, groom, sponsa (fem.) betrothed woman, bride, fr. sponsus, past part. of spondere to promise solemnly, betroth; akin to Gk spendein to make a libation, promise, spendesthai to make a treaty, sponde libation, pl. treaty. Skt spanti he makes a libation] 1: a man or woman joined in wedlock: married person: HUSBAND, WIFE * * * 2: obs a: BRIDE, BRIDEGROOM b: either one of a betrothed couple: FIANCE, FIANCEE 3a: the church united in sacred bonds to God or to Christ b: a woman who by vow becomes an affianced of Christ c. God or Christ united in sacred bonds to the church 2 Spouse * * * vt [ME spousen, fr. 1 spouse] 1 obs: to unite in marriage: give in marriage 2 Archaic: ESPOUSE, WED 3 obs: AFFIANCE, BETROTH [Webster's Third New International Dictionary, Unabridged, copyright 1961 by G. & C. Merrian Co.]↩
3. SEC. 152. DEPENDENT DEFINED. * * *
(b) Rules Relating to General Definition.--For purposes of this section-- * * *
(5) An individual is not a member of the taxpayer's household if at any time during the taxable year of the taxpayer the relationship between such individual and the taxpayer is in violation of local law.↩
4. Sec. 51-1↩. Requisites of marriage; solemnization.--The consent of a male and female person who may lawfully marry, presently to take each other as husband and wife, freely, seriously and plainly expressed by each in the presence of the other, and in the presence of an ordained minister of any religious denomination, minister authorized by his church, or of a magistrate, and the consequent declaration by such minister or officer that such persons are man and wife, shall be a valid and sufficient marriage * * * 5. Sec. 25-111. Requirement of license and solemnization A. A marriage may not be contracted by agreement without a marriage ceremony. B. A marriage contracted within this state is not valid unless: 1. A license is issued as provided in this title, and 2. The marriage is solemnized by a person authorized by law to solemnize marriages, or by a person purporting to act in such capacity and believed in good faith by at least one of the parties to be so authorized. ↩
6. Section 152(b)(5) was added to the Code by the Technical Amendments Act of 1958. The House Report with respect to this act contains the following discussion of the amendment which is now section 152(b)(5): The bill also amends section 152(b), which contains the rules relating to the general definition of a dependent. On this point it makes it clear that a person who is not a close relative but is living with the taxpayer may not be claimed as a dependent, if the relationship between the taxpayer and the individual is an illegal one under the applicable local law. For example, this would make it clear that an individual who is a "common-law wife" where the applicable State law does not recognize common-law marriages would not qualify as a dependent of the taxpayer. This qualification applies only to the definition of a dependent under section 152(a)(9). H. Rept. No. 775, 85th Cong., 1st Sess. (1957), 1958-3 C.B. 811↩, 817-818.
7. Sec. 13-222. Open and notorious cohabitation or adultery; punishment A person who lives in a state of open and notorious cohabitation or adultery is guilty of a felony punishable by imprisonment in the state prison for not more than three years.↩
8. Petitioner argues that since he has never been prosecuted under Arizona law, he is not in violation of that law. Petitioner testified that he had never been prosecuted either in North Carolina or Arizona because of his relationship with Marie. However, section 152(b)(5) does not require that a taxpayer have been held to be in violation of the law but merely requires that the relationship between the taxpayer and the person he claims as a dependent be in violation of local law. When respondent has denied a claimed exemption to a taxpayer because of his relationship with the claimed dependent being in violation of local law, the burden is on the taxpayer to show that the relationship is not in violation of local law just as the burden is on the taxpayer to show any other determination of respondent to be in error. See Rule 142(a), Tax Court Rules of Practice and Procedure.↩
9. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) Allowance of Deduction.--There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year (reduced by any amount deductible under paragraph (2)) for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income, and (2) an amount (not in excess of $150) equal to one-half of the expenses paid during the taxable year for insurance which constitutes medical care for the taxpayer, his spouse, and dependents.↩