STATE v. J. C. COOPER.

*Local Option—Elections—Public Acts—Townships—Jurisdiction—Indictment—Duplicity— When Defect Cured by Verdict.*

1. The result of an election cannot be collaterally impeached—this must be done by an action brought for that specific object.

2. Public Acts are always noticed judicially by the Court, and the omission to refer to them in indictments is not ground for arrest of judgment.

3. Where an election is held under the Local Option Act in a township, and afterwards the name of the township is changed by law, this does not have the effect of repealing the Local Option Law therein.

4. The Superior, Criminal and Inferior Courts have jurisdiction of offences against the Local Option Act.

5. An indictment which charges more than one offence in the same count is bad for duplicity, and may be quashed for that reason, but if a *nol. pros.* is entered as to all but one charge, or the defendant elects to go to trial and is convicted, the defect will be cured.

INDICTMENT for violation of the Local Option Law, tried before *Montgomery, J.,* at September Term, 1887, of TRANSYLVANIA Superior Court.

It is charged in the indictment that the sale of spirituous liquors was prohibited in Davidson River Township, in the county of Transylvania, by a vote of a majority of the electors of that township, as allowed by the statute (*The Code,* §§ 3110, 3116), and that the defendant sold such liquors within that township while such sale was so prohibited to sundry persons named, there being but one count in the indictment, so that several distinct offences were charged in the same indictment and in the same count.

Before the defendant pleaded, " by direction of the Court, and without objection from the defendant, the Solicitor was required to elect as to which charge of the bill he would try upon, and a *nol. pros.* was entered as to all but the charge

of selling to Samuel Merrill. Defendant pleads not guilty, and specially that no such election as that charged or reported was ever held."

On the trial the State offered in evidence the minutes of the County Commissioners of said county containing an order for an election on local option in said township.

Record of petitions before said board and the original petitions of citizens of said township.

Record of returns of election of June, 1880, made to Board of Commissioners, declaring the result of said election: for prohibition, 84; for license, 74.

The Register of Deeds, as a witness, identified the records and original petitions, and testified that there were no other records of said board concerning said election.

Samuel Merrill, a witness for the State, testified that in February, 1887, he bought two packages of whiskey containing five gallons each, and four or four and a half gallons also, from the defendant at rectifying house in said township.

The defendant offered as a witness one Forsythe, who stated that he remembered the local option election in 1880; that he took an interest in it outside, and assisted in counting the votes.

The defendant asked the following question:

" Do you recollect of any votes in favor of license being thrown out after the counting of the votes?"

Objection by the State. Sustained, and the defendant excepted.

The defendant's counsel offered the following further exception in writing:

The counsel for the defendant offered to prove that at the election held, as alleged in the bill of indictment, there was seventy-four votes cast for license and eighty-four for prohibition, and this was the return of the judges of said election. He then offered to prove that after the election was

open and had progressed for a while the judges took out the
votes and began *de novo*, without any notice or proclamation
to that effect.   He also proposed to prove that after the elec-
tion was over and the polls closed the judges threw out
eight or ten votes, all of which were for license, and had
these votes been counted it would have changed the result,
or at least made it doubtful.   But his Honor ruled out the
question intended to elicit this information, and held that
the election could not be thus collaterally attacked, and
thereupon the defendant excepted.   The counsel further
insisted that the irregularities before and after the election
was closed were sufficient to annul the election, and the same
was done by the officers appointed to hold the election, and
employees acting under their immediate direction, and it
was done for the purpose of defeating the will of the major-
ity of the voters.   But his Honor was of the opinion that
the election could not be thus attacked, and thereupon ruled
out the evidence as was intended to be elicited by the ques-
tion propounded to the witness Forsythe, and the defendant
excepted.

Defendant moved in arrest of judgment on the ground:

1. That the bill of indictment is defective, in that no allu-
sion is made to the act of Assembly authorizing local option,
nor to the act of Assembly changing the name of the town-
ship.

2. That the act of Assembly, chapter 136, 1881, changing
the name of the township, repeals the local option act.

3. That this Court has no jurisdiction of the offence
charged in the bill of indictment

Motion in arrest.   Defendant excepts.

There was a verdict of guilty and judgment against the
defendant, from which he appealed to this Court.

*The Attorney General,* for the State.
*Mr. G. N. Folk,* for the defendant.

MERRIMON, J. (after stating the case.)  The defendant made no obj· ction on the trial to the evidence produced on the part of the State.  It went to prove that an election was ordered and held according to the forms of the law, and that the result was ascertained and declared in writing to be in favor of "Prohibition."  The statute (*The Code,* § 3114) required that it should be held as nearly as practicable in accordance with the statute regulating elections of members of the General Assembly.  It seems to us that this was substantially done.  It appears that there was but one voting place in the township.  The judges and registrar conducted the election at the time and place prescribed, ascertained the result thereof, and certified the same over their proper signatures, and deposited their certificate with the Register of Deeds.  They, under the circumstances, necessarily constituted the canvassing board for the purpose of ascertaining the result, and what they did was about as near an observance of the election law applicable as was practicable.  There was no formal proclamation of the result, but this was not essential.  The important and essential things to be done were, that the proper officers should hold the election, ascertain the result and certify the same, and deposit their certificate in the proper public office of deposit, so that the people of the township—indeed, all people—could there learn the result.  They had notice of the election, and the law charged them with knowledge of the result.  It provided the means by which and the place where such information might be had by everybody.

Such ascertainment and declaration of the result of the election was *prima facie* correct, and it was conclusive until by a proper action, brought for the purpose, the true result otherwise should be ascertained and declared by a judicial determination.  The law contemplates and intends, generally, that the result of an election, as determined by the proper election officers, shall stand and be effective until it shall be

regularly contested and reversed, or adjudged to be void by a tribunal having jurisdiction for that purpose. It would lead to confusion and ridiculous absurdity to allow the validity and result of an election to be contested every time the result of it, as determined by the election officers, became material collaterally in a litigation. In the present case the defendant might be able to prove facts showing that the election mentioned was void for one cause or another; another defendant, charged with a like offence, might be less fortunate, and the State might show that it was regular and valid, and so on indefinitely. The law does not provide for such continual and repeated contests in every case that may arise. It intends that one contest, properly instituted for the purpose, shall establish the validity or invalidity of the election questioned. If the present defendant or others were dissatisfied with the conduct of the election, or the result of it as declared, they should have promptly brought their action, as they might have done, to contest its validity and the correctness of the ascertained result. They had the right to do so, and, as they did not, it cannot be attacked in a collateral action. This is well settled. *Smallwood* v. *New Berne*, 90 N. C., 36; *State* v. *Emery*, 98 N. C., 768, and cases there cited; *Gatling* v. *Boone*, Ibid., 573; *McDowell* v. *Construction Company*, 96 N. C., 514; *Rigsbee* v. *Durham*, 99 N. C., 341.

Nor can the motion in arrest of judgment be sustained. The first ground assigned in support of it is without force. The statute in respect to " Local Option " referred to is a public one, of which the Court takes notice, and applies in all proper connections, and in this case in connection with the charge in the indictment. And so also the statute (Acts 1881, ch 136) which changes the name of the township mentioned in the indictment is a public local one, of which the Court takes notice, and applies, in connection with the averment in the indictment, that the name had been changed by that statute. *State* v. *Chambers*, 93 N. C., 600.

Nor does the statute last cited repeal the " Local Option Act" in the township mentioned or elsewhere, or in any way or manner affect it; it simply changes the name, and does not purport to change or affect the territory or anything or any state or condition of things within its compass.

Very clearly, the Court had jurisdiction of the offence charged. The statute (*The Code*, § 3116) makes it a misdemeanor to sell any spirituous liquors within a " county, town or township" where such sale is prohibited as provided in that statute, and no particular measure of punishment for the offence is prescribed. A Justice of the Peace, therefore, had not jurisdiction of the offence charged, and the Superior Court had, and the Criminal and Inferior Courts would have in like cases.

What we have said disposes of the objections raised by the defendant. It is made our duty to look through the whole record and see if it is sufficient to warrant the judgment. We have done so, and deem it proper to say that we find that the indictment contained but a single count, and in effect charged several distinct offences. It was, therefore, bad, because of duplicity, and the defendant might have objected to it successfully by demurrer, or a motion to quash it might have been sustained. Ach. Cr. Pl., 50. But the Court required the Solicitor to elect that he would prosecute for a single offence charged, and he entered a *nolle prosequi* as to all the offences charged but one. This, in effect, left but a single charge in the indictment, and we cannot see that the defendant suffered or could suffer any harm by pleading to it, and going to trial upon his plea. But if there was a defect it was cured by the verdict, and the judgment could not be arrested on that account. *State* v. *Locklear*, Busb., 205 ; *State* v. *Simons*, 70 N. C., 336.

There is no error.        Affirmed.