## STATE v. JOHNNY RUSSELL.

### (Filed 18 April, 1951.)

**1. Criminal Law § 81c (1)—**

Where upon defendant's confession admitted in evidence, which was not challenged or repudiated by him, he is guilty of murder in the second degree at least, his contention that in the manner in which the court permitted the solicitor to cross-examine his witnesses and in the general conduct of the trial, the court impeached the testimony of witnesses and conveyed an expression of opinion to the jury on the merits in violation of G.S. 1-180, is feckless, and any error in this respect will be held harmless upon appeal from conviction of second degree murder.

**2. Criminal Law § 81b—**

Where the charge of the court is not in the record it will be assumed that the charge properly instructed the jury upon the law arising upon the evidence.

STATE *v.* RUSSELL.

· APPEAL by defendant from *Rudisill, J.,* January Term, 1951, of BUNCOMBE.

Criminal prosecution on indictment charging the defendant with the murder of one Willard Jackson.

The record discloses a confession on the part of the defendant. In it he says that on Saturday, 29 July, 1950, Willard Jackson came to his place of business, 26 Clingman Avenue, Asheville, began cursing, "walked up to me and smacked me across the face. I saw a gun in his pocket." The defendant ordered him from his premises. "He went on up the street and said he was going to kill me before dark." The defendant then says he went home, got his pistol, put it in his pocket and returned to Clingman Avenue "where Willard Jackson was standing." When the defendant came within 10 or 12 feet of Jackson, he called to him. Jackson turned around, so he says, and "I started shooting at him. I thought that Jackson might shoot me and I was so mad that I started shooting at him when I saw him. I shot Jackson till I saw him fall."

The forgoing is taken from the defendant's confession which he gave to one of the officers after his arrest.

On the trial, the defendant testified that he did not go to his house to get his pistol but got it out of his laundry or place of business and stayed at his home for sometime, hoping that he would not again come in contact with the deceased who was a violent and dangerous man; that when he did return and approached the point where the deceased was standing, the deceased drew his knife and started towards the defendant; that he thereupon shot one time and missed the deceased and as the deceased kept coming towards him, he fired two or three more shots which were fatal; that they were facing each other when the shooting started.

The defendant sought to justify the killing on the grounds of self-defense.

The doctor who examined the deceased testified that he found two bullet wounds, one in the right back, 3 or 4 inches over the middle of the spine, and the other in the back of the head; that in his opinion the first did and the second could have caused his death. "I don't think Willard lived long. I think he was dead on arrival at the hospital."

Verdict: Not guilty of murder in the first degree; guilty of murder in the second degree.

Judgment: Imprisonment in the State's Prison for a term of not less than 25 nor more than 30 years.

Defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*I. C. Crawford and George Pennell for defendant.*

STACY, C. J.   The record discloses no challenge to the voluntariness of defendant's confession, either before or after its reception in evidence; nor was there any repudiation, disavowal, or denial of the statements contained therein, save the defendant's testimony to the effect that he "was all upset and had been worried to death all morning."   *S. v. Rogers, ante,* 390.   On the strength of the confession, the jury was fully justified in returning the verdict they did, albeit the confession seems to have been offered only in corroboration of the officer's testimony.

The defendant took a number of exceptions to the manner in which the solicitor cross-examined his witnesses and to the general conduct of the hearing.   He contends that these exceptions, taken as a whole, or in their totality, if not singly, make it quite clear that the presiding judge inadvertently allowed the solicitor to take charge of the proceeding.

For example, the solicitor was allowed to ask one of defendant's witnesses on cross-examination if he did not know "that John Dailey is the man that is financing this trial?"   This was before the defendant had gone upon the witness stand and his character had not then been put in issue.   *S. v. Fowler,* 230 N.C. 470, 53 S.E. 2d 853; *S. v. Choate,* 228 N.C. 491, 46 S.E. 2d 476.   The answer was, "I do not know."   Then, this question: "Do you know this entire shooting occurred over a white liquor war here between the deceased and this Johnny Russell and John Dailey and another white man here in town?   Objection.   Answer: "No, Sir, I don't know what the trouble was."   And this further question: "What were you talking to John Dailey about here a while ago in the courtroom?   Objection.   "He is a well known bootlegger here in town, isn't he?"   Objection sustained.

Similar questions were asked other witnesses and in this way, the defendant contends, his character was impeached and his defense prejudiced, notwithstanding the seemingly harmless and even favorable answers to the questions.   *S. v. Jones,* 229 N.C. 276, 49 S.E. 2d 463.   Of course, it is possible for the court, by the manner of conducting the trial, to impeach the testimony of witnesses, or to convey an expression of opinion to the jury on the merits of the case in violation of G.S. 1-180 as rewritten, Chap. 107, S.L. 1949.   *S. v. Simpson, ante,* 438.   The defendant thinks this was done here.

The defendant has pressed his position in respect of the totality of his exceptions with force and conviction; and but for the acquittal of defendant on the capital offense, it might prove difficult to resist his appeal. *S. v. Hart,* 186 N.C. 582, 120 S.E. 345.   Here, however, the defendant's confession makes him guilty at least of murder in the second degree, if not of the capital offense, and hence the errors assigned were apparently harmless.   *S. v. Muse,* 230 N.C. 495, 53 S.E. 2d 529.

The defendant could not explain to the satisfaction of the jury, nor is it apparent from the record, how he and the deceased were facing each other, when the shooting occurred, and yet the deceased was shot in the right back and in the back of the head. The jury did not accept his plea of self-defense.

The court's charge to the jury has not been brought forward in the transcript and we must assume the judge properly instructed the jury in respect of the matters about which the defendant now complains. *S. v. Hovis, ante,* 359.

On the record as presented, the exceptions, taken singly or in their total impact, seem insufficient to justify a disturbance of the result below. Hence, the verdict and judgment will be upheld.

No error.