STATE v. JOE GIBSON, ET AL.

(Filed 7 June, 1951.)

**1. Indictment § 10—**

A count charging named defendants with conspiracy to operate a lottery and further with selling lottery tickets charges but one offense of conspiracy, and therefore it is not required that the defendants be again named in regard to the selling of lottery tickets.

**2. Indictment § 8: Conspiracy § 4—**

An indictment containing a count charging named defendants with conspiracy to operate a race-horse lottery and subsequent counts charging the named defendants with operating a race-horse lottery, and with selling race-horse lottery tickets and further counts charging named defendants (the same parties except for the deletion of one of them) with conspiracy to operate a butter-and-egg lottery and with operating a butter-and-egg lottery and with selling butter-and-egg lottery tickets, *held* not objectionable for duplicity or multifariousness. G.S. 15-152.

**3. Conspiracy § 5—**

Where the indictment charges that the named defendants did conspire together with each other and "divers other persons" to commit a criminal offense, the State may show the identity of a person not named in the indictment who was a member of the conspiracy and introduce in evidence paraphernalia found in his possession used in furtherance of the common design.

**4. Gaming § 8—**

A calculator used as part of the paraphernalia in the operation of a lottery may be introduced in evidence.

**5. Conspiracy § 5—**

In a prosecution for conspiracy considerable latitude is allowed in the reception of evidence offered to establish the gravamen of the offense, and the evidence is not limited to direct evidence.

**6. Criminal Law § 42d—**

An article may be introduced in evidence to corroborate testimony in regard thereto by witnesses whose credibility has been attacked.

**7. Criminal Law §§ 50d, 81c (1)—**

While the trial court may not by language or conduct at any time during the trial impeach the credibility of a witness or discredit efforts of either party before the jury, and while such impeachment or depreciation once made cannot be cured or corrected, nevertheless appellants must make it plainly appear that the occurrence complained of prejudiced their cause sufficiently to overcome the presumption in favor of the regularity of the proceedings in the lower court.

**8. Criminal Law § 81b—**

Appellants have the burden of showing that alleged error was harmful, as the presumption is against them, and merely casting doubt upon the validity of the proceedings is insufficient.

**9. Criminal Law § 62f—**

The court may not suspend sentence for a period exceeding five years. G.S. 15-197, G.S. 15-200.

APPEALS by defendants from *Sharp, Special Judge,* September Criminal Term, 1950, of GUILFORD—Greensboro Division.

Criminal prosecution on indictment charging the defendants in a six-count bill with conspiracy to operate lotteries, with operating them, and with kindred offenses.

*Count One* charges C. A. (Shug) York, Joe Gibson, George Farley, Theo. Graves, Sammie Scott and W. C. (Bill) Coble with conspiracy to operate a race-horse lottery in Guilford County, and further with selling race-horse lottery tickets in said county.

*Count Two* charges the same defendants (naming them) with operating a race-horse lottery in Guilford County.

*Count Three* charges the same defendants (naming them) with selling race-horse lottery tickets in Guilford County.

*Count Four* charges C. A. (Shug) York, Joe Gibson, George Farley, Theo. Graves and W. C. (Bill) Coble with conspiracy to operate a butter-and-egg lottery in Guilford County, and further with selling butter-and-egg lottery tickets in Guilford County.

*Count Five* charges the same defendants mentioned in *Count Four* (naming them) with operating a butter-and-egg lottery in Guilford County.

*Count Six* charges the same defendants mentioned in Counts Four and Five (naming them) with selling butter-and-egg lottery tickets in Guilford County.

Immediately upon the call of the case by the solicitor, the defendants and each of them through counsel moved to quash the bill of indictment for duplicity and duplication, and also demurred *ore tenus* to the bill. Both were overruled; exceptions.

On the second day of the trial C. A. (Shug) York failed to appear in court and a mistrial was ordered as to him. Counts Five and Six were dismissed as against George Farley and Theo. Graves on their pleas of former jeopardy.

The trial proceeded against the remaining defendants on all the counts in the bill.

The principal witnesses for the prosecution were Ed Leonard, a confederate with the defendants in the lottery business, and Eugene Watlington, a "pick-up man" in the same business.

It appears from the testimony of these two witnesses that the defendants were engaged in two lotteries in Guilford County, one a butter-and-egg lottery, carried on principally during the morning hours five days a week from Monday to Friday; the other a race-horse lottery, operated principally in the afternoons and on Saturdays and Sundays.

Starting with the initial operators in the butter-and-egg lottery are the so-called "writers" who take orders for and write lottery tickets and collect for them. The purchaser selects a number of three digits which is written on the ticket. Next in order are the "head-men" who collect the tickets from the writers, and above these are the "pick-up men" who pick up the tickets from the head men or at certain designated places of concealment where they are left, and transmit them to lottery head-quarters, in the instant case operated by C. A. (Shug) York, Joe Gibson and W. C. (Bill) Coble.

All tickets are required to reach headquarters by 11:30 each morning. The winning number is determined by taking the last digit in the butter quotation from the New York Stock Exchange of the preceding day and the first two digits in the quotation for the egg market.

If a player or a purchaser of ticket or tickets does not select the winning number he gets nothing back. "The ratio of the win, if you happen to hit was supposed to be $5.00 for one penny," or sometimes 300 to 1 instead of 500 to 1. But "it worked out so that any time the number was overhit for the day they would tell you" (the pick-up men), according to Leonard's testimony, "to change the number and make up some other number. . . . When I changed it, I would just make up some other number and declare that to be the winner" (winning number).

The race-horse lottery was operated in a similar manner to the butter-and-egg lottery, except for the difference in determining the winning number. This number came from the first three horse races held at certain tracks. "Whenever there was an overhit or hits for more than the amount of take that day, I changed the numbers, the people that I had picked up the numbers from who had selected the winning horse or winning position (or winning number) did not get their money."

The witness Leonard was permitted to testify, over objection, that one L. C. Sykes was "involved in this case"; that he had left the State or town; that he had a calculator in his home, used for totaling lottery tickets.

"Q. The Solicitor: Have you seen this machine which I show you before? Objection. Yes.

"The Court: What is the purpose of that?

"The Solicitor: The State desires to show that this calculator was found in the home of L. C. Sykes and that L. C. Sykes is a part of this entire conspiracy." Objection; overruled; exception.

The calculator was offered in evidence, over objection, and the witness testified that he had used it at Sykes' home in totaling lottery tickets, or "for running the work" as he called it.

During the examination of the witness Leonard the following occurred:

"Mr. Glidewell: Read that question, I wasn't listening.

"The Court (addressing Mr. Glidewell): What did you say?

"Solicitor: He said he wasn't listening, your Honor.

"Mr. Glidewell: What was that question—I was talking and didn't hear it—read it, will you?

"The Court: No. Go ahead, Mr. Witness.

"Mr. Glidewell: Do you mean to say I can't have the Reporter read a question for me?

"The Court: Not now; maybe later.

"Mr. Glidewell (rising and advancing): I want an exception to that put in the record.

"The Court: Sit down, Mr. P. W."

Objection; overruled; exception.

The defendants offered no evidence.

They complain also at one of the opening sentences of the charge as disparaging to their case: "By his plea of not guilty each defendant denies the charge against him as set out in the bill of indictment and he denies the credibility of the evidence upon which the State relies, even though that evidence is not contradicted." Exception.

Verdict: "All defendants guilty as charged on all counts."

Judgments pronounced on all six counts against the several defendants.

On Count Two the defendants, Gibson, Coble, Graves and Farley (in addition to being sentenced on other counts) were each sentenced to the roads for six months, "suspended for a period of ten (10) years upon good behavior of the defendant." Exceptions.

On Count Five the defendants, Gibson and Coble (in addition to being sentenced on other counts) were each sentenced to the roads for six months, "suspended for a period of ten (10) years upon good behavior of the defendant." Exceptions.

The defendants appeal, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*P. W. Glidewell, Sr., Shelley B. Caveness, and Joe D. Franks, Jr., for defendants.*

STACY, C. J.  We have here for decision (1) the validity of the indictment, (2) the competency of evidence, (3) the propriety of a colloquy between court and counsel, and (4) the legality of suspended sentences.

## I.  THE VALIDITY OF THE INDICTMENT.

The defendants have pressed their motion for quashal of the indictment with conviction and apparent confidence. They seem assured that it offends the rule against duplicity or multifariousness in a single bill, and that in the first and fourth counts, two separate and distinct offenses are joined without naming the defendants in respect of the second alleged offense. For this latter position, they cite *S. v. Camel,* 230 N.C. 426, 53 S.E. 2d 313, as controlling: and *S. v. Robinson,* 224 N.C. 412, 30 S.E. 2d 320; *S. v. Wilson,* 121 N.C. 650, 28 S.E. 416, and *S. v. Cooper,* 101 N.C. 684, 8 S.E. 134, as fully supporting their position.

We think the defendants have misconceived the intent and purpose of the First and Fourth Counts in the bill. These counts charge only a single offense, *i.e.,* conspiracy to do two things: (1) to operate a lottery (violative of G.S. 14-290), and (2) to sell tickets therein (violative of G.S. 14-291.1). Thus, the State elected in drafting these counts to assume a double burden—to establish the operation of a lottery by the

---

STATE *v.* GIBSON.

---

defendants and the sale by them of tickets therein. The court was careful to make this plain to the jury. However, just one offense is charged, and a single sentence was imposed on each count. Hence, the authorities cited and relied upon would seem to be inapplicable to the facts of the instant record.

In respect of the alleged duplicity or multifariousness of the entire bill, it is sufficient to say the central indictment is for conspiracy. All the remaining counts are related to each other "and to the single transaction or series of transactions which grow out of the one concatenated design." *S. v. Dale,* 218 N.C. 625, 12 S.E. 2d 556; *S. v. Jarrett,* 189 N.C. 516, 127 S.E. 590.

Speaking to the question in *S. v. Malpass,* 189 N.C. 349, 127 S.E. 248, *Varser, J.,* said: "The rule in this State now is, that different counts relating to the same transaction, or to a series of transactions, tending to one result, may be joined, although the offenses are *not* of the same grade," citing as authority for the position: *S. v. Lewis,* 185 N.C. 640, 116 S.E. 259; *S. v. Burnett,* 142 N.C. 577, 55 S.E. 72; *S. v. Howard,* 129 N.C. 584, 40 S.E. 71; *S. v. Harris,* 106 N.C. 682, 11 S.E. 377; *S. v. Mills,* 181 N.C. 530, 106 S.E. 677.

The bill here suffices to withstand the charge of duplicity. The challenge is not sustained. G.S. 15-152; *S. v. Anderson,* 208 N.C. 771, 182 S.E. 643; 5 R.C.L. 1081; 11 Am. Jur. 562; I Wharton's Crim. Procedure 624; Joyce on Indictments 2d 657.

## II. THE COMPETENCY OF EVIDENCE.

The defendants objected to the testimony of Leonard reciting that L. C. Sykes was one of the operators of the lotteries; that he had a calculator in his home for totaling tickets, which the witness identified; that Sykes had been tried and convicted and had since left the State or town.

The indictment charges that the defendants (naming them) "did . . . conspire together and with each other and divers other persons" to operate lotteries in Guilford County, etc. It was therefore competent to show who the "divers other persons" were, or to make known the other conspirators in the enterprise. *S. v. Andrews,* 216 N.C. 574, 6 S.E. 2d 35. Without objection, the witness freely told of conversations and transactions with C. A. (Shug) York after a mistrial had been ordered as to him or in his case. If the defendants now find it embarrassing to be identified as associates of L. C. Sykes, they have no one to blame but themselves. *S. v. Beal,* 199 N.C. 278, 154 S.E. 604. The association was originally of their own choosing.

Those who enter into a conspiracy to violate the criminal laws thereby forfeit their independence, and jeopardize their liberty, for, by agreeing

with another or others to engage in an unlawful enterprise, they thereby place their safety and freedom in the hands of each and every member of the conspiracy. *S. v. Williams,* 216 N.C. 446, 5 S.E. 2d 314. The acts and declarations of each conspirator, done or uttered in furtherance of the common, illegal design, are admissible in evidence against all. *S. v. Ritter,* 197 N.C. 113, 147 S.E. 733. "Everyone who enters into a common purpose or design is equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any one of the others, in furtherance of such common design." *S. v. Jackson,* 82 N.C. 565; *S. v. Smith,* 221 N.C. 400, 20 S.E. 2d 360; *S. v. Summerlin*—"Hole-in-the-Wall" Case,—232 N.C. 333, 60 S.E. 2d 322; *S. v. Anderson,* 208 N.C. 771, *loc. cit.* 786, 182 S.E. 643; *S. v. Herndon,* 211 N.C. 123, 189 S.E. 173.

The calculator was competent to be shown in evidence as a part of the paraphernalia used in the operation of the lotteries. *S. v. Wells,* 219 N.C. 354, 13 S.E. 2d 613; *S. v. Fogleman,* 204 N.C. 401, 168 S.E. 536; *S. v. Lea,* 203 N.C. 13, 164 S.E. 737; Stansbury's N. C. Evidence, Sec. 85.

Moreover, in cases grounded on fraud or conspiracy, considerable latitude is allowed in the reception of evidence offered to establish the gravamen of the charge or offense. Direct evidence of the charge is not essential, though here it is both direct and positive, with its credibility, however, sharply challenged. The calculator was offered to bolster the testimony of the witness whose credibility was being attacked. It was competent for this purpose. *S. v. Anderson, supra.*

### III.  PROPRIETY OF COLLOQUY BETWEEN COURT AND COUNSEL.

The defendants stressfully contend that their cases were prejudiced when the court directed counsel to "sit down" as a result of the colloquy shown in the record; that the direction clearly revealed the court's impatience with their defenses and the manner in which they were being conducted, and that the court's displeasure or opinion in this respect was further emphasized at the opening of the charge when the jury was told the State's evidence "is not contradicted."

Conceding that the direction in question and the further remark in respect of the State's uncontradicted evidence may have been somewhat incautious or infelicitous or even indicative of impatience with the defenses offered by the defendants, we hardly think the effect was as hurtful or impeaching as the defendants now contend. At least, as we apprehend the record, the impeachment appears insufficiently pronounced to overcome the presumption against it. *In re Will of Johnson, ante,* 570. The appellants have the burden of showing harmful error, and they must make it appear plainly, as the presumption is the other way. Nor is it suffi-

cient merely to cast doubt on the validity of the proceeding. The appellants have the burden of showing error. *Collingwood v. R. R.*, 232 N.C. 192, 59 S.E. 2d 584; *Nichols v. Bank,* 231 N.C. 158, 56 S.E. 2d 429; *Scott v. Swift & Co.,* 214 N.C. 580, 200 S.E. 21.

True, the authorities are to the effect that at no time during the trial of a cause may the presiding judge cast doubt upon the testimony of a witness, impeach his credibility, or discredit the efforts of either party before the jury. *S. v. Cantrell,* 230 N.C. 46, 51 S.E. 2d 887; *S. v. Owenby,* 226 N.C. 521, 39 S.E. 2d 378; *S. v. Perry,* 231 N.C. 467, 57 S.E. 2d 774. This may be done by the use of language or conduct calculated to impair the credit which the jury might otherwise or under normal conditions give to the testimony or the position of one of the parties. *S. v. Simpson, ante,* 438, 64 S.E. 2d 568; *S. v. Carter, ante,* 581, 65 S.E. 2d 9; *S. v. Russell, ante,* 487, 64 S.E. 2d 579.

Of course, the fact the court later afforded counsel an opportunity to examine the witness further, or to have any question read, would not have cured the impeachment, if such it were, for impeachment or depreciation at any time during the trial ordinarily is incurable or incorrectible and fatal to the proceeding. *S. v. McNeill,* 231 N.C. 666, 58 S.E. 2d 366, and cases there cited.

In the light of the record as we understand it, the exception is not sustained.

## IV. LEGALITY OF SUSPENDED SENTENCES.

It is the position of the defendants, Gibson, Coble, Graves and Farley, that as they were convicted of misdemeanors, the court was without authority to suspend their sentences on Counts Two and Five for a period of ten years on good behavior; that they did not consent to such suspensions, and that these suspended judgments should be vacated.

The position appears to be well taken in the light of G.S. 15-200 which appears in the Chapter on Criminal Procedure and provides that, "The period of probation or suspension of sentence shall not exceed a period of five years and shall be determined by the judge of the court and may be continued or extended, terminated or suspended by the court at any time, within the above limit."

In the case of *S. v. Wilson,* 216 N.C. 130, 4 S.E. 2d 440, the inherent power of a court having jurisdiction to suspend judgment or stay execution in a criminal case for determinate periods and for a reasonable length of time, was recognized and upheld under authority of the earlier cases, citing some of them, but it was there observed, "Since that time the period during which the execution of a sentence in a criminal case may be suspended on conditions has been fixed as five years, regardless of

the term of imprisonment authorized by the statute," citing the above statute.

What was said in *Wilson's Case* has not been changed or modified in subsequent decisions. *S. v. Miller*, 225 N.C. 213, 34 S.E. 2d 143, and cases cited. The general authority recognized in G.S. 15-197 is to be read in connection with the limitation fixed by G.S. 15-200.

Perhaps it should be noted the defendant, Sammie Scott, has not appealed, and the judgment against the defendant Coble on Count Three is void for uncertainty or indefiniteness; immaterial, however, since only a concurrent sentence was entered on this count.

Those who are disposed or inclined to take part in a lottery, or the numbers racket, might do well to read the evidence in this case. It comes from the inside and is quite revealing. Duplicity, fraud, overreaching and false pretense appear to be the bases of operation. Chicanery is also employed. The appeal is to cupidity, rapacity, avarice and covetousness. It is a shabby business, if it can be called a business at all. How anyone could hope to gain in such an enterprise is difficult to perceive or to understand. The fixed pattern undoubtedly is "heads I win; tails you lose," with just enough lure or bait to attract and mislead the unwary. You can't win at the other fellow's game, especially if he be a charlatan. It would seem that only a knave, a dupe, a simpleton or a "blind fish" would bite at such a hook. But then, there are those who act as if they think with their feet or only in the aftertime. "A fool and his money are soon parted"—English proverb.

A careful perusal of the transcript leaves us with the impression the validity of the trial should be upheld, but as indicated, the case will be remanded for correction of errors in the suspended judgments.

Error and remanded.