65 S.E.2d 508 (1951)
233 N.C. 691
STATE
v.
GIBSON et al.
No. 651.
Supreme Court of North Carolina.
June 7, 1951.
*511 Atty. Gen. Harry McMullan and Asst. Atty. Gen. T. W. Bruton, for the State.
P. W. Glidewell, Sr., Reidsville, Shelley B. Caveness and Joe D. Franks, Jr., Greensboro, for defendants.
STACY, Chief Justice.
We have here for decision (1) the validity of the indictment, (2) the competency of evidence, (3) the propriety of a colloquy between court and counsel, and (4) the legality of suspended sentences.

I. The Validity of the Indictment.

The defendants have pressed their motion for quashal of the indictment with conviction and apparent confidence. They seem assured that it offends the rule against duplicity or multifariousness in a single bill, and that in the first and fourth counts, two separate and distinct offenses are joined without naming the defendants in respect of the second alleged offense. For this latter position, they cite State v. Camel, 230 N.C. 426, 53 S.E.2d 313, as controlling: and State v. Robinson, 224 N.C. 412, 30 S.E.2d 320; State v. Wilson, 121 N.C. 650, 28 S.E. 416, and State v. Cooper, 101 N.C. 684, 8 S.E. 134, as fully supporting their position.
We think the defendants have misconceived the intent and purpose of the First and Fourth Counts in the bill. These counts charge only a single offense, i. e., conspiracy to do two things: (1) to operate a lottery (violative of G.S. § 14-290), and (2) to sell tickets therein (violative of G.S. § 14-291.1). Thus, the State elected in drafting these counts to assume a double burdento establish the operation of a lottery by the defendants and the sale by them of tickets therein. The court was careful to make this plain to the jury. However, just one offense is charged, and a single sentence was imposed on each count. Hence, the authorities cited and relied upon would seem to be inapplicable to the facts of the instant record.
In respect of the alleged duplicity or multifariousness of the entire bill, it is sufficient to say the central indictment is for conspiracy. All the remaining counts are related to each other "and to the single transaction or series of transactions which grow out of the one concatenated design". State v. Dale, 218 N.C. 625, 12 S.E.2d 556, 564; State v. Jarrett, 189 N.C. 516, 127 S.E. 590.
Speaking to the question in State v. Malpass, 189 N.C. 349, 127 S.E. 248, 250, Varser, J., said: "The rule in this state now is that different counts relating to the same transaction, or to a series of transactions, tending to one result, may be joined, although the offenses are not of the same grade", citing as authority for the position. State v. Lewis, 185 N. C. 640, 116 S.E. 259; State v. Burnett, 142 N.C. 577, 55 S.E. 72; State v. Howard, 129 N.C. 584, 40 S.E. 71; State v. Harris, 106 N.C. 682, 11 S.E. 377; State v. Mills, 181 N.C. 530, 106 S.E. 677.
The bill here suffices to withstand the charge of duplicity. The challenge is not sustained. G.S. § 15-152; State v. Anderson, 208 N.C. 771, 182 S.E. 643; 5 R.C.L. 1081; 11 Am.Jur. 562; I Wharton's Crim.Procedure 624; Joyce on Indictments (2d) 657.

*512 II. The Competency of Evidence.

The defendants objected to the testimony of Leonard reciting that L. C. Sykes was one of the operators of the lotteries; that he had a calculator in his home for totaling tickets, which the witness identified; that Sykes had been tried and convicted and had since left the State or town.
The indictment charges that the defendants (naming them) "did * * * conspire together and with each other and divers other persons" to operate lotteries in Guilford County, etc. It was therefore competent to show who the "divers other persons" were, or to make known the other conspirators in the enterprise. State v. Andrews, 216 N.C. 574, 6 S.E.2d 35. Without objection, the witness freely told of conversations and transactions with C. A. (Shug) York after a mistrial had been ordered as to him or in his case. If the defendants now find it embarrassing to be identified as associates of L. C. Sykes, they have no one to blame but themselves. State v. Beal, 199 N.C. 278, 154 S.E. 604. The association was originally of their own choosing.
Those who enter into a conspiracy to violate the criminal laws thereby forfeit their independence, and jeopardize their liberty, for, by agreeing with another or others to engage in an unlawful enterprise, they thereby place their safety and freedom in the hands of each and every member of the conspiracy. State v. Williams, 216 N.C. 446, 5 S.E.2d 314. The acts and declarations of each conspirator, done or uttered in furtherance of the common, illegal design, are admissible in evidence against all. State v. Ritter, 197 N.C. 113, 147 S.E. 733. "Everyone who enters into a common purpose or design is equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any one of the others, in furtherance of such common design". State v. Jackson, 82 N.C. 565; State v. Smith, 221 N.C. 400, 20 S.E.2d 360; State v. Summerlin (Hole-in-the-Wall Case), 232 N.C. 333, 60 S.E.2d 322; State v. Anderson, 208 N.C. 771, loc. cit. 786, 182 S.E. 643; State v. Herndon, 211 N.C. 123, 189 S.E. 173.
The calculator was competent to be shown in evidence as a part of the paraphernalia used in the operation of the lotteries. State v. Wells, 219 N.C. 354, 13 S.E.2d 613; State v. Fogleman, 204 N. C. 401, 168 S.E. 536; State v. Lea, 203 N.C. 13, 164 S.E. 737; Stansbury's N. C. Evidence, Sec. 85.
Moreover, in cases grounded on fraud or conspiracy, considerable latitude is allowed in the reception of evidence offered to establish the gravamen of the charge or offense. Direct evidence of the charge is not essential, though here it is both direct and positive, with its credibility, however, sharply challenged. The calculator was offered to bolster the testimony of the witness whose credibility was being attacked. It was competent for this purpose. State v. Anderson, supra.

III. Propriety of Colloquy Between Court and Counsel.

The defendants stressfully contend that their cases were prejudiced when the court directed counsel to "sit down" as a result of the colloquy shown in the record; that the direction clearly revealed the court's impatience with their defenses and the manner in which they were being conducted, and that the court's displeasure or opinion in this respect was further emphasized at the opening of the charge when the jury was told the State's evidence "is not contradicted".
Conceding that the direction in question and the further remark in respect of the State's uncontradicted evidence may have been somewhat incautious or infelicitous or even indicative of impatience with the defenses offered by the defendants, we hardly think the effect was as hurtful or impeaching as the defendants now contend. At least, as we apprehend the record, the impeachment appears insufficiently pronounced to overcome the presumption against it. In re Will of Johnson, 233 N.C. 570, 65 S.E.2d 12. The appellants have the burden of showing harmful error, and they must make it appear *513 plainly, as the presumption is the other way. Nor is it sufficient merely to cast doubt on the validity of the proceeding. The appellants have the burden of showing error. Collingwood v. Winston Salem Southbound R. R. Co., 232 N.C. 192, 59 S.E.2d 584; Nichols v. Wachovia Bank & Trust Co., 231 N.C. 158, 56 S.E. 2d 429; Scott v. Swift & Co., 214 N.C. 580, 200 S.E. 21.
True, the authorities are to the effect that at no time during the trial of a cause may the presiding judge cast doubt upon the testimony of a witness, impeach his credibility, or discredit the efforts of either party before the jury. State v. Cantrell, 230 N.C. 46, 51 S.E.2d 887; State v. Owenby, 226 N.C. 521, 39 S.E.2d 378; State v. Perry, 231 N.C. 467, 57 S.E.2d 774. This may be done by the use of language or conduct calculated to impair the credit which the jury might otherwise or under normal conditions give to the testimony or the position of one of the parties. State v. Simpson, 233 N.C. 438, 64 S.E.2d 568; State v. Carter, 233 N.C. 581, 65 S.E.2d 9; State v. Russell, 233 N.C. 487, 64 S.E.2d 579.
Of course, the fact the court later afforded counsel an opportunity to examine the witness further, or to have any question read, would not have cured the impeachment, if such it were, for impeachment or depreciation at any time during the trial ordinarily is incurable or incorrectible and fatal to the proceeding. State v. McNeill, 231 N.C. 666, 58 S.E.2d 366, and cases there cited.
In the light of the record as we understand it, the exception is not sustained.

IV. Legality of Suspended Sentences.

It is the position of the defendants, Gibson, Coble, Graves and Farley, that as they were convicted of misdemeanors, the court was without authority to suspend their sentences on Counts Two and Five for a period of ten years on good behavior; that they did not consent to such suspensions, and that these suspended judgments should be vacated.
The position appears to be well taken in the light of G.S. § 15-200 which appears in the Chapter on Criminal Procedure and provides that, "The period of probation or suspension of sentence shall not exceed a period of five years and shall be determined by the judge of the court and may be continued or extended, terminated or suspended by the court at any time, within the above limit".
In the case of State v. Wilson, 216 N.C. 130, 4 S.E.2d 440, 442, the inherent power of a court having jurisdiction to suspend judgment or stay execution in a criminal case for determinate periods and for a reasonable length of time, was recognized and upheld under authority of the earlier cases, citing some of them, but it was there observed, "Since that time the period during which the execution of a sentence in a criminal case may be suspended on conditions has been fixed as five years, regardless of the term of imprisonment authorized by statute", citing the above statute.
What was said in Wilson's Case has not been changed or modified in subsequent decisions. State v. Miller, 225 N.C. 213, 34 S.E.2d 143, and cases cited. The general authority recognized in G.S. § 15-197 is to be read in connection with the limitation fixed by G.S. § 15-200.
Perhaps it should be noted the defendant, Sammie Scott, has not appealed, and the judgment against the defendant Coble on Count Three is void for uncertainty or indefiniteness; immaterial, however, since only a concurrent sentence was entered on this count.
Those who are disposed or inclined to take part in a lottery, or the numbers racket, might do well to read the evidence in this case. It comes from the inside and is quite revealing. Duplicity, fraud, overreaching and false pretense appear to be the basis of operation. Chicanery is also employed. The appeal is to cupidity, rapacity, avarice and covetousness. It is a shabby business, if it can be called a business at all. How any one could hope to gain in such an enterprise is difficult to perceive or to understand. The fixed *514 pattern undoubtedly is heads I win; tails you lose", with just enough lure or bait to attract and mislead the unwary. You can't win at the other fellow's game, especially if he be a charlatan. It would seem that only a knave, a dupe, a simpleton or a "blind fish" would bite at such a hook. But then, there are those who act as if they think with their feet or only in the aftertime. "A fool and his money are soon parted"English Proverb.
A careful perusal of the transcript leaves us with the impression the validity of the trial should be upheld, but as indicated, the case will be remanded for correction of errors in the suspended judgments.
Error and remanded.