STATE OF NORTH CAROLINA v. GARY C. LINDSEY
AND MARK WELLS

No. 748SC1058

(Filed 16 April 1975)

1. Criminal Law § 92— two defendants — consolidation of cases for trial

The trial court may, in its discretion, consolidate for trial multiple charges against a defendant, or multiple defendants, where the charges are of the same class and so connected in time or place that evidence at the trial of one of the indictments will be competent and admissible at the trial of the others; the trial court properly consolidated the cases against two defendants for trial in this prosecution for conspiracy to break or enter, larceny, and receiving stolen goods, where the evidence tended to show that defendants were the operators of a filling station which they used in a conspiracy as the base of operations for the "fencing" of stolen goods. G.S. 15-152.

2. Criminal Law §§ 34, 102— reference by district attorney to other offenses — no mistrial

The trial court did not err in denying defendants' motion for mistrial made on the basis of the district attorney's statement made in the presence of the jury, "We had other charges that arose. For instance accessory before and accessory after the fact . . . . "

3. **Conspiracy § 5; Criminal Law § 79— acts and declarations of conspirators — admissibility**

It is the general rule that when evidence of a *prima facie* case of conspiracy has been introduced, the acts and declarations of each party to it in furtherance of its objectives are admissible against the other conspirators; therefore, the trial court in a prosecution for conspiracy to break or enter, larceny, and receiving stolen goods did not err in allowing evidence of conversations which took place between the other conspirators and ·the defendants· at the defendants' gas station on a number of separate occasions, even though some of those conversations included references to many kinds of stolen goods besides those which defeñdants were charged with receiving, since such evidence was relevant and admissible to prove defendants' design or *modus operandi* in the furtherance of the objectives of the conspiracies charged or the other charges of receiving stolen goods and to show intent and guilty knowledge.

4. **Criminal Law § 86— plea bargains of witnesses — limitation of cumulative evidence proper**

It is recognized that it is proper to test a. witness as to bias concerning a promise of pardon as the result of his testimony for the State, but it is equally well established that the refusal to permit questions which would invoke merely repetitious or cumulative evidence is not error; therefore, in view of the overwhelming amount of evidence admitted regarding each witness's plea bargain and criminal proclivities, defendants were not prejudiced by the exclusion of other evidence which was generally cumulative in nature.

5. **Criminal Law § 98— motion to sequester witnesses — no reason given — denial proper**

Where defendant's request that two witnesses be sequestered for the remainder of the trial was made after the State had begun to present its case, and the defendant failed to explain why he wanted the witnesses sequestered, the trial court did not abuse its discretion in denying the request.

6. **Criminal Law § 101— attempt to influence juror — juror excused and replaced by alternate**

The trial court did not err in excusing a juror and replacing him with the alternate juror where the original juror testified that his brother called him, told him that one defendant was a friend of his, stated that he would appreciate anything the juror could do to help, called back an hour later, apologized for calling, and said that defendant had approached him at work and asked him to call which he did while defendant was there with him.

7. **Criminal Law §§ 79, 101— joint trial — attempt by one defendant to influence juror — admissibility of evidence**

The rule that the confession of a nontestifying codefendant in a joint trial which implicates the other defendant in the commission of a crime is inadmissible as against that defendant did not apply in this case to prohibit. admission of evidence that one defendant approached the brother .of· a juror·to see if he would call the juror and put in a

State v. Lindsey

good word for him, since that activity did not necessarily amount to a confession, the other defendant was not implicated in any manner by this evidence, the court cautioned the jury not to consider the evidence as against the other defendant, and the evidence was relevant to show defendant's consciousness of his guilt or his unwillingness to rely on the soundness of his case.

On *Certiorari* to review Order of *Lanier, Judge.* Judgments entered 28 January 1974 in Superior Court, WAYNE County. Heard in the Court of Appeals 20 February, 1975.

Each of the defendants pled not guilty to charges of conspiracy to break or enter, larceny from, and receiving goods stolen from (1) the Donald K. Whitley warehouse on 12 February 1973, (2) the Laughlin's Poultry Farm, Inc. warehouse on 12 February 1973, and (3) the Kemp Furniture Industries, Inc., garage on 18 February 1973, and to charges of receiving goods stolen from each of the aforesaid buildings, a total of twelve charges against each defendant.

The case for the State was based primarily on the testimony of John Robert Potter, the leader of a theft ring who participated in all of the three charged break-ins, and three of his associates who participated in one or more of the three break-ins. For his testimony Potter was given immunity from prosecution for the three break-ins and similar offenses in both Wayne and Wake Counties, and his three associates entered into plea bargains with the State. The evidence indicated that these four witnesses revealed to law officers more than a hundred break-ins and thefts in Wayne County.

The evidence for the State tended to show that defendants Lindsey and Wells operated a filling station in or near Goldsboro, where they kept a U-Haul truck, ostensibly for hire. They arranged for Potter to have a duplicate ignition key made for the truck so that he might pick up and use the truck to bring them the tires which were stolen pursuant to the break-ins. The defendants had agreed to pay Potter $33.33 each for all the tires that he brought to them. The tires had a market value of $125.00 each. The fruits of the break-ins and thefts from the three buildings as alleged in the indictments were delivered in the U-Haul truck to defendants at their filling station. They paid the agreed price to Potter, who divided the money among his associates.

The defendants did not offer evidence.

Both defendants were convicted of the three counts of conspiracy to receive stolen goods and the three charges of receiving stolen goods; they were acquitted of the counts charging conspiracy to break or enter and conspiracy to commit larceny in each of the three indictments. From judgments imposing consecutive prison terms, the defendants appealed.

*Attorney General Edmisten by Associate Attorney James Wallace, Jr., for the State.*

*George F. Taylor for Gary C. Lindsey and Roland C. Braswell for Mark Wells, defendants.*

CLARK, Judge.

[1] The defendants objected to the consolidation for trial of the various charges against both of them. The trial court may, in its discretion, consolidate for trial multiple charges against a defendant, or multiple defendants, where the charges are of the same class and so connected in time or place that evidence at the trial of one of the indictments will be competent and admissible at the trial of the others. G.S. 15-152; *State v. White,* 256 N.C. 244, 123 S.E. 2d 483 (1962); *State v. Garcia,* 16 N.C. App. 344, 192 S.E. 2d 2 (1972). Here the State's evidence tended to show that the defendants were the operators of a filling station, which they used in a conspiracy with the witness Potter and others as the base of operations for the "fencing" of stolen goods. The charges were so connected and the evidence so interrelated that the trial court was fully justified in ordering the consolidation.

[2] The defendants made motions for mistrial and continuance when Assistant District Attorney Jacobs, in the presence of the jury, made the following statement: "[W]e had other charges that arose. For instance accessory before and accessory after the fact . . . . " The statement was made in response to the argument of defense counsel, also made in the presence of jurors, in opposition to the State's motion for consolidation. The reference was to other charges against the defendants of accessory before the fact and accessory after the fact to the three break-in charges referred to in the conspiracy indictments, and it was made to inform the court that the State was not seeking to include the accessory charges in the motion for consolidation. Several minutes before this statement was made District Attorney Parker announced in open court and in the presence of

jurors that "[t]he accessory, we are not pressing; that is before and after each breaking and entering." Defendants then made no objection or request for instructions. Under the circumstances the State's attorney did not overstep the bounds of propriety and fairness which should characterize the conduct of an officer of the court. The conduct of the trial rests in the sound discretion of the trial court. *Shute v. Fisher,* 270 N.C. 247, 154 S.E. 2d 75 (1967) ; *State v. Dove,* 222 N.C. 162, 22 S.E. 2d 231 (1942). The ruling of the trial court in denying the motion for mistrial was sound, and we find no abuse of discretion.

[3] The State was allowed, over defendants' objection, to introduce evidence of conversations which took place between the other conspirators and the defendants. These conversations occurred at the defendants' gas station on a number of separate occasions. The defendants objected to the admission into evidence of those parts of the conversations which related to plans to steal and receive televisions, guns and other stolen goods. They assign error on the ground that the defendants were not charged with receiving or conspiring to receive such stolen goods, but were charged only with receiving stolen tires and conspiring to break in, steal, and receive stolen tires. The record reveals that their talks were not separated according to the kind of goods, but were general in scope and often a single conversation included references not only to tires but to many other kinds of goods. We find no error in the admission of such testimony nor in the testimony of the witnesses that they at various times sold goods other than tires to the defendants. It is the general rule that when evidence of a prima facie case of conspiracy has been introduced, the acts and declarations of each party to it in furtherance of its objectives are admissible against the other conspirators. *State v. Conrad,* 275 N.C. 342, 168 S.E. 2d 39 (1969). Furthermore, the prima facie case can, in the discretion of the trial court, be established subsequently to the introduction of the declarations. *State v. Thomas,* 244 N.C. 212, 93 S.E. 2d 63 (1956). In the present case there was an abundance of evidence, even some without objection, establishing a prima facie case of conspiracy. Considerable latitude is allowed in the admission of evidence offered to establish the gravamen of a conspiracy charge. *State v. Gibson,* 233 N.C. 691, 65 S.E. 2d 508 (1951).

Evidence of declarations and acts relative to receiving stolen goods outside the conspiracy were admissible under a well-

established exception to the general rule that evidence of distinct substantive offenses is inadmissible to prove either another crime or to show character. Such evidence is admissible where it is probative of guilty knowledge, intent, plan or design and other things that are logically relevant. *State v. Summerlin*, 232 N.C. 333, 60 S.E. 2d 322 (1950) ; 1 Stansbury, N. C. Evidence, §§ 92, 159 (Brandis rev. 1973).

Examination of the many evidentiary objections and exceptions reveals that the questioned evidence was relevant and admissible to prove defendants' design or *modus operandi* in the furtherance of the objectives of the conspiracies charged or the other charges of receiving stolen goods and to show intent and guilty knowledge.

[4] Several of the witnesses for the State were testifying pursuant to a plea bargaining arrangement. On cross-examination, counsel for the defendants sought to raise questions relating to the terms of these plea bargaining agreements, each witness's knowledge of the maximum sentence they could have received had they not plea bargained, and the details of their prison records. It is recognized that it is proper to test a witness as to bias concerning a promise of pardon as the result of his testimony for the State. *State v. Chance*, 279 N.C. 643, 185 S.E. 2d 227 (1971) ; *State v. Roberson*, 215 N.C. 784, 3 S.E. 2d 277 (1939). However, it is as equally well established that the refusal to permit questions which would invoke merely repetitious or cumulative evidence is not error. *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1 (1966).

Counsel for the defendants sought to elicit answers to these questions from three separate witnesses testifying for the State. The first witness, John Robert Potter, stated that he was testifying for only one reason and that was that the State would not prosecute him for the crimes he had committed. There were an extraordinary number of pages in the record devoted to bringing out the innumerable crimes Potter had committed. He in fact stated that he did not " . . . think it would be over a hundred." He further admitted that he had previously served a number of years in jail on numerous theft charges and went into the sentences he had received for each.

The second witness, Arnold Gaitan DuBois, testified that he had plea bargained a twenty-year sentence for the crimes he had committed specifying thirty-eight or nine cases of "break-

ings, enterings, larcenies, safecrackings, armed robberies, and receiving." He understood that he could have gotten as many as seven hundred years if he had not plea bargained.

The third witness, Donald Gene Langston, testified that he had been in prison four or five times for forgery, uttering a forged document, taking a stolen car across state lines, worthless checks, and forcible trespass. He even admitted that if it would be advantageous for him to tell a lie, he would. It should also be noted that a witness, David Earl Vinson, also testified for the State to the effect that he had plea bargained a seven-year sentence for crimes he had committed as part of a theft ring operating in Wayne County. He had already served eight years in prison.

In view of the overwhelming amount of evidence admitted regarding each witness's plea bargaining and criminal proclivities, we do not feel that the defendants were prejudiced by the exclusion of other evidence which was generally cumulative in nature. While we recognize the substantial right of counsel to sift the witness on cross-examination with regard to questions of bias, we believe that in the circumstances of this case, the trial court had discretionary authority to keep the cross-examination within proper bounds and to exclude repetitious evidence. His exercise of that discretion was not abusive.

[5] At one point in the trial while John Potter was testifying, defendant Lindsey's attorney requested that witnesses Vinson and DuBois be sequestered for the remainder of the trial. It is contended that the denial of this request was error. A motion to sequester is directed to the discretion of the trial court and its ruling thereon is not reviewable on appeal except in cases of manifest abuse. *State v. Felton*, 283 N.C. 368, 196 S.E. 2d 239 (1973); *State v. Jones*, 21 N.C. App. 666, 205 S.E. 2d 147 (1974). In this case, the request was made after the State had begun to present its case and the defendant failed to explain why he wanted the witnesses sequestered. We find no merit in this assignment of error.

[6] The jury, with an alternate, was empaneled on Monday, 21 January 1974. On Tuesday morning, Juror No. 6, was called to the witness stand by the court, in the absence of the other jurors, and testified that last night he had received a telephone call from his brother, Ray Malpass in Kinston, who told him that the defendant Wells was a friend of his and if there was

anything the juror could do to help, he would appreciate it; that about an hour later his brother called back, apologized for calling, and said that defendant Wells had approached him at work and asked him to call, which he did while said defendant was there with him. He did not tell anything else about the call.

The juror was excused. The other jurors were called to the courtroom, told that Juror No. 6 was discharged, and the alternate juror was told to take the No. 6 seat. Defendants objected to the removal of Juror No. 6, to his replacement by the alternate, and moved for a mistrial and continuance. The objections were overruled and the motions denied, and we find no abuse of discretion and no error in this ruling.

At trial, the State offered Ray Malpass. He testified in substance that Wells had approached him to see if he would call his brother and put in a good word for him. Ray said he would, so he called his brother with defendant Wells listening and asked him to help out Wells.

All pertinent parts of Ray Malpass's testimony were objected to and at the end of his testimony, defendant Lindsey's attorney moved for a mistrial on the grounds that this evidence was prejudicial to his client.

[7]  On appeal, the defendant particularly relies upon the case of *Bruton v. United States*, 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968), wherein it was held that the confession of a nontestifying codefendant in a joint trial which implicated the other defendant in the commission of a crime was inadmissible as against that defendant under the Confrontation Clause of the Sixth Amendment. While the facts in this case do not necessarily warrant a finding that Wells' activities amounted to a "confession," in any event, we believe that the evidence was admissible in that at no place in the questioned testimony was defendant Lindsey implicated in any manner. Furthermore, cautioning instructions that the jury was not to consider this evidence as against defendant Lindsey were given by the trial court both during the examination of Malpass and in the charge to the jury. In *State v. Fox*, 274 N.C. 277, 291, 163 S.E. 2d 492, 502 (1968), the Court said, " . . . in joint trials of defendants it is necessary to exclude extrajudicial confessions unless all portions which implicate defendants other than the declarant can be deleted without prejudice either to the State or the declarant."

The activity of defendant Wells in attempting to embrace a juror through Ray Malpass was obviously relevant to show his consciousness of guilt or his unwillingness to rely on the soundness of his case. See *State v. Case,* 93 N.C. 545 (1885). See also *Commonwealth v. White,* 447 Pa. 331, 290 A. 2d 246 (1972) and *Gassenheimer v. United States,* 26 App. D.C. 432 (1906).

Since defendant Lindsey was not implicated, we believe that the evidence of these activities was admissible under the language of *State v. Fox, supra,* and that *Bruton v. United States, supra,* is not applicable in any event because the attempted embracery by Wells was not a "confession" in the technical sense of the word.

The record of the case on appeal consists of 480 pages, with 428 exceptions, grouped into 12 assignments of error. We have traversed the legalistic maze created by experienced defense counsel in continuously and vigorously opposing the evidence offered in abundance by the State; we have sifted and treated these assignments of error which are sufficiently meritorious to justify comment; and we find that the trial judge throughout the long week of trial ruled patiently on all of the many and varied objections and motions, and that he conscientiously sought to give and did give to the defendants a fair trial free from prejudicial error.

No error.

Judges PARKER and HEDRICK concur.